# W. B. CRAIG *et al.*

## *v.*

## DAVID C. SOUTHARD *et al.*

*Filed at Ottawa October 26, 1893.*

1. WILLS—*contest of will—mental capacity of testator.* The real question submitted to the jury on the contest of the validity of a will, is not whether the party had sufficient mental capacity to comprehend and transact ordinary business, but did he, at the time of executing the instrument purporting to be his will, have such mind and memory as enabled him to understand the particular business in which he was then engaged.

2. If a testator has such capacity, and is able to remember who are the natural objects of his bounty, to recall to mind his property, and make disposition of it rationally, according to some purpose or plan formed in his mind, he is possessed of testamentary capacity, and with such capacity, uninfluenced improperly by others, he may make a valid testamentary disposition of his estate.

3. The condition of the testator's mind at the time of the execution of his will is the real subject of inquiry. Proof of his condition prior and subsequent to that time is competent only as it tends to illustrate the mental capacity of the testator at the time of making the instrument. And facts shown, whether anterior or subsequent, depend for their probative force upon the clearness and certainty with which they tend to demonstrate the condition of mind and memory at the time of the execution of the proposed will.

4. SAME—*test of testamentary capacity.* If a man has uniformly exercised judgment and discretion in respect of affairs requiring equal mental capacity with the making of his will, he should be presumed to have sufficient capacity to make the same. The converse of this proposition, however, is not true. It can not be said, as a matter of law, that because incapable of transacting ordinary business a person is therefore incapable of making his will.

5. SAME—*evidence admissible on the question.* All persons who have had the means of observation are permitted to testify concerning the existence and measure of capacity of a testator, so far as it may tend to shed light upon the issue, and may give their opinions touching his mental capacity, based upon such observation.

6. SAME—*weight of opinions as to capacity.* The weight or effect of such opinions depends upon the means of knowledge of the witness and the facts on which it is based, possible of delineation, and the

capacity of the witness tò correctly interpret what he has observed. Therefore, the facts upon which the opinion is predicated may be gone into, either to sustain and give force to the opinion, or to discredit it.

7. SAME—*evidence of capacity prior to the time of making a will.* On the trial of the contest of a will, the contestants called a witness, and after showing that he had known the testator intimately for a number of years, asked him, "What was the condition of" the testator's "mind during the last few years of his life." Upon objection being made, the court said: "You can not put the question in that way. It seems to me you can only ask the general question as to whether he was capable of transacting ordinary business." Counsel replied, "I think I have a right to have his mental condition described, —his memory, judgment," etc. The court replied, "I do not agree with you," and sustained the objection: *Held,* that the court erred in thus limiting the scope of the inquiry.

8. As it requires no greater mental capacity to dispose of property by will than to transact ordinary business, such as buying and selling, collecting, loaning, leasing, and the like transactions, it has been generally held that capacity to transact such ordinary business will show testamentary capacity.

9. SAME—*contest—conduct of trial in doubtful case.* On the contest of a will, where the evidence is conflicting and irreconcilable as to the mental capacity of the testator, it is important that the trial be so conducted and the jury so directed that the issue be fairly presented to the jury.

10. SAME—*order of county court probating, not competent evidence on the trial.* The statute makes the testimony taken at the probate of a will admissible in evidence on the trial of a bill contesting the will; but the order of the county court admitting the will to probate is not proper or competent evidence, it being calculated to influence the jury in favor of the validity of the will, and its admission in a doubtful case is error.

11. SAME—*order of the evidence.* On the contest of a will, the party upon whom the burden of proof rests, must, in the first instance, produce all the proof he proposes to offer in support of his allegation, and after his adversary has closed his proof he may only be heard in adducing proof rebutting the proofs given by the contestant.

12. This view is unaffected by the fact that upon a *prima facie* case being made, the presumption of sanity arising, the burden is cast upon the contestant to show, by a preponderance of all the evidence, that the deceased, at the time of the execution of the will, was wanting in testamentary capacity.

13. While this course is the better one, a deviation from it would perhaps not be held to be such error as to call for a reversal, unless it should appear that the contestant was unduly prejudiced thereby.

14. EVIDENCE — *opinion based upon observation.* The knowledge acquired by actual observation of the handwriting, or capacity, disposition and peculiarities of others, can not be correctly said to be mere opinion. It approaches to knowledge, and is such, in so far as the imperfection of our faculties will permit these things to be known.

WRIT OF ERROR to the Circuit Court of Grundy county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. S. C. STOUGH, and Mr. B. F. SHIPLEY, for the plaintiffs in error:

The weight and force to be given to the opinion of a subscribing witness will depend upon his opportunities of observation and his intelligence, the same as in the case of any other witness. *Turner* v. *Cheesman,* 15 N. J. L. 243; *Stephens* v. *Van Cleave,* 4 Wash. C. C. 262; *Scribner* v. *Crane,* 2 Paige, 147.

All that is peculiar in temperament or modes of thought, including the testator's idiosyncracies, are proper matters for the consideration of the jury. *Shaler* v. *Bumstead,* 99 Mass. 112.

All persons having an acquaintance with the testator, and his methods of business, and the extent of it, are competent to give opinions, the same as experts, touching the mind and memory of the testator. *Bible Society* v. *Price,* 115 Ill. 642; *Roe* v. *Taylor,* 45 id. 489; *Upstone* v. *People,* 109 id. 175; Beach on Wills, sec. 106.

The burden of showing the sanity or mental capacity to make the will rests on the proponents. *Beaubien* v. *Cycotte,* 8 Mich. 9; *Aikin* v. *Weckerly,* 19 id. 482; *Kinsey* v. *McGinnis,* 21 id. 123; *Renn* v. *Lamon,* 33 Texas, 760; *Williams* v. *Robinson,* 42 Vt. 658; *Tingley* v. *Cowgill,* 48 Mo. 291; *Comstock* v. *Hadlynn,* 8 Conn. 261.

The party propounding the will must, in the first instance, prove the mental capacity of the testator. *Rigg* v. *Wilton,*

13 Ill. 15; *Harper* v. *Harper,* 1 N. Y. 351; *Delafield* v. *Parish,* 25 id. 9.

In a bill of this character it is necessary that the will be probated anew, as though it was presented for the first time for probate.     *Potter* v. *Potter,* 41 Ill. 84; *Trish* v. *Newell,* 62 id. 196; *Tate* v. *Tate,* 89 id. 421; *Moyer* v. *Swygart,* 124 id. 262.

It was error to admit in evidence the order or judgment of the county court admitting the will to probate.

Mr. E. L. CLOVER, and Mr. W. E. DAVID, for the defendants in error:

The oaths of subscribing witnesses, on being introduced, made a *prima facie* case, and the burden of proving unsoundness of mind then rested on complainants. *Wilbur* v. *Wilbur,* 129 Ill. 392; *Carpenter* v. *Calvert,* 83 id. 71; *Holloway* v. *Galloway,* 51 id. 159; *Buchanan* v. *McClellan,* 105 id. 59.

The affidavits of the subscribing witnesses, as taken in the probate court, that the testator was of sound mind and memory, being introduced in evidence, made out a *prima facie* case. *Carpenter* v. *Calvert, supra; Holloway* v. *Galloway, supra.*

When the evidence as to mental capacity of the testator is conflicting, the judgment will not be reversed on the ground that the evidence does not support the verdict. *Johnson* v. *Moulton,* 1 Scam. 532; *Roney* v. *Monagan,* 3 Gilm. 85; *Railway Co.* v. *Vasburgh,* 45 Ill. 311; *O'Riley* v. *Fitzgerald,* 40 id. 310; *DeClurq* v. *Mungin,* 46 id. 112; *Young* v. *Rock,* 48 id. 42.

The standard and measure for a testator's mental capacity is his ability to transact his ordinary business.   *Keithley* v. *Stafford,* 126 Ill. 507; *Trish* v. *Newell,* 62 id. 196; *Meeker* v. *Meeker,* 75 id. 260; *Yoe* v. *McCord,* 74 id. 34; *Rutherford* v. *Morris,* 77 id. 418; *Carpenter* v. *Calvert,* 83 id. 62; *Kimball* v. *Cuddy,* 117 id. 232; *Freeman* v. *Easly,* id. 317; *Bruce* v. *Black,* 125 id. 33.

A party may be so mentally diseased as not to be of sound mind, and yet may possess a disposing mind. 1 Jarman on Wills, 51; *McClintock* v. *McCord,* 32 Mo. 419; *Trish* v. *Newell,* 62 Ill. 205; *Brown* v. *Riggin,* 94 id. 569; *Freeman* v. *Easly,* 117 id. 320; *Rutherford* v. *Morris,* 77 id. 397; *Newhouse* v. *Goodwin,* 17 Barb. 236; *Meeker* v. *Meeker,* 75 Ill. 260; *Campbell* v. *Campbell,* 130 id. 466; 1 Redfield on Wills, 128.

If he is capable of buying and selling property, settling accounts, collecting and paying out money, he must usually be regarded as capable of making a will. *Myatt* v. *Walker,* 44 Ill. 495; *Lilly* v. *Waggoner,* 27 id. 395; *Brown* v. *Riggin,* 94 id. 560; *English* v. *Porter,* 109 id. 285; *Bice* v. *Hall,* 120 id. 597; *Schneider* v. *Manning,* 121 id. 376; *Campbell* v. *Campbell,* 130 id. 466; *Stockhouse* v. *Horton,* 15 N. J. 202; *Steward* v. *Lespenard,* 26 Wend. 255; *McClintock* v. *McCord,* 32 Mo. 419; *Stephens* v. *Van Cleave,* 4 Wash. C. C. 266; *Snow* v. *Benton,* 28 Ill. 306; *Comstock* v. *Hadlynn,* 8 Conn. 254; *Kinne* v. *Kinne,* 9 id. 101; *Titcomb* v. *Vantyle,* 84 Ill. 374; *Duffield* v. *Morris,* 2 How. 375; *Snow* v. *Benton,* 28 Ill. 306; *Blakely's Will,* 48 Wis. 294; *Bible Society* v. *Price,* 115 Ill. 623.

All men having an opportunity of knowing the testator were competent to give their opinions, the same as experts, upon the state of mind of the deceased. Jarman on Wills, chap. 3, sec. 115; *Rutherford* v. *Morris,* 77 Ill. 403; *Meeker* v. *Meeker,* 75 id. 268; *Roe* v. *Taylor,* 45 id. 385; *Buchanan* v. *McLennan,* 105 id. 59.

A judgment will not be reversed because the court below admitted improper evidence, if sufficient legal evidence appears in the record to sustain the verdict. *Iron Works* v. *Webber,* 31 Ill. App. 306; *Schultz* v. *Lepage,* 24 Ill. 160; *Life Ins. Co.* v. *Beck,* 74 id. 167; *Life Ins. Co.* v. *Foote,* 79 id. 361; *Elgin* v. *Kimball,* 90 id. 359; *Carpenter* v. *Davis,* 71 id. 395; *Lowry* v. *Goster,* 91 id. 182; *McGregor* v. *Filer,* 69 id. 514; *Railway Co.* v. *Cloud,* 9 Ill. App. 155.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This is a bill by William B. Craig and others to contest an instrument probated as the last will and testament of David Craig, deceased, alleging, first, mental incapacity in the testator; and second, undue influence in the making and execution of the alleged will. Answer was filed admitting all of the material allegations of the bill, except that undue influence was exercised, or that said David Craig was wanting in mental capacity. An issue was made and submitted to a jury, as it is provided shall be done by the statute, resulting in a verdict finding the instrument to be the last will and testament of David Craig, and a decree was entered in accordance therewith.

Upon looking into the record it is found that the evidence was conflicting and irreconcilable upon the subject of mental capacity of said David Craig at the time of the execution of the paper purporting to be his will. As the case must again be submitted to a jury, no discussion of the weight of the evidence would be proper. But it may be said that there is ample evidence to sustain a verdict either way upon that question. This being so, it was important that the trial be so conducted and the jury so directed that the issue be fairly presented. *Wilbur* v. *Wilbur et al.* 129 Ill. 392.

The proponents of the will produced the attesting witnesses, and made proof of its formal and technical execution. The will, together with affidavits of the attesting witnesses, thereto attached, made in the county court upon the probate of the will, were then read to the jury. The proponents then offered a certified copy of the will, with the affidavits attached, and the order admitting the will to probate, which, against the objection of the contestants, were permitted to be read in evidence. The statute authorizing a bill in chancery to contest the validity of a will provides, in terms, that "an issue at law shall be made up, whether the writing produced be the will of

the testator or testatrix, or not," and the trial of such issue is *de novo*, and without being in any way influenced by the fact that the instrument purporting to be a will has been admitted to probate.     True, by the statute the testimony taken at the probate of the instrument is rendered admissible upon the issue in chancery, but the order of court is not proper or competent evidence, and when admitted would be calculated to influence the verdict of the jury in favor of the validity of the will.     (*Purdy* v. *Hall*, 134 Ill. 298; *Rigg* v. *Wilton*, 13 id. 15.)     The original will, with the testimony taken at the time it was probated, having been admitted in evidence, there could have been no purpose in introducing the certified copy, other than to get before the jury the fact that the county court had found the instrument offered, to be the last will and testament of David Craig.     This was clearly improper, and while, of itself, it would not, probably, be reversible error, it could not, in view of the conflicting evidence, have failed to be prejudicial to the contestants.

After the introduction of the testimony of the subscribing witnesses, the will, and the probate thereof, the proponents rested.     Thereupon the contestants offered their evidence tending to show want of capacity in said Craig to make a will at the time of the execution of the instrument offered.     At the conclusion of contestants' evidence, proponents, over the objection of contestants, were permitted to re-open the case in chief, and to introduce a large number of witnesses, whose testimony tended to show that said decedent had sufficient mental capacity, etc.     While this would not, of itself, be reversible error, it was improper.     The burden being upon the proponents of the will to show, in the first instance, not only the technical execution of the will, but also to show affirmatively, by testimony of the attesting witnesses, the mental capacity of the testator, (*Carpenter* v. *Calvert*, 83 Ill. 71,) it followed, logically, that having opened the case upon that subject they should introduce whatever evidence they desired,

tending to establish such mental capacity. In *Mueller* v. *Rebhan,* 94 Ill. 142, after showing the rule in some courts to be, that it is sufficient for the party upon whom proof of an allegation rests, in the first instance, to produce proof enough to make a *prima facie* case, only, and that he is not required to accumulate proof upon the issue until evidence has been introduced tending to contradict his *prima facie* case, it is said: "That rule has not prevailed in the courts of this State, but the more usual rule is, that the party upon whom the burden of proof rests, must, in the first instance, produce all the proof he proposes to offer in support of his allegation, and after his adversary has closed his proof he may only be heard in adducing proof rebutting the proofs given by his adversary." That, like this, was a bill filed to contest a will. This view is unaffected by the fact that upon a *prima facie* case being made, the presumption of sanity arising, the burden is cast upon the contestant to show, by a preponderance of all the evidence, that the decedent, at the time of the execution of the will, was wanting in mental capacity to make the same. (*Holloway* v. *Galloway,* 51 Ill. 159; *Carpenter* v. *Calvert, supra; Guild* v. *Hull,* 127 id. 523; *Wilbur* v. *Wilbur, supra; Argo* v. *Coffin,* 142 id. 368.) While the better and approved practice is as indicated, a deviation from it would, perhaps, not be held to be error for which a cause should be reversed, unless it should appear, in the particular case, that contestants were unduly prejudiced thereby.

It was sought by contestants to show the mental condition of the testator before and about the time of the execution of the will. After showing by the witness Gifford, a justice of the peace, that he had known the testator intimately for a number of years, the following question was put: "What was the condition of old Mr. Craig's mind during the last few years of his life?" Upon objection being made, the court said: "You can not put the question in that way. It seems to me you can only ask the general question as to whether he was

capable of transacting ordinary business." Counsel replied, "I think I have a right to have his mental condition described, —his memory, judgment,". etc. The court replied, "I do not agree with you," and sustained the objection. Questions were put to this and other witnesses, such as, "What was the condition of his memory?" "What was the condition of his mind and memory?" "You may describe the condition of his memory." "What is your opinion as to whether, at that time, his mind was sound or unsound?" "Have you noticed the condition of his mental faculties in conversation with him?" To which, objections were severally sustained.

We are of opinion that the learned chancellor was in error in thus limiting the scope of inquiry. There is, perhaps, some confusion in the books, and difficulty has always been found, in formulating tests by which to determine testamentary capacity. Opportunity for observation of the mental condition of persons occurs, ordinarily, in the common affairs of life, and as it requires no greater mental capacity to dispose of property by will than to transact ordinary business, such as buying and selling, collecting, loaning, leasing, and the like transactions, it has been generally held that capacity to transact such ordinary business would show testamentary capacity. *Meeker* v. *Meeker,* 75 Ill. 260; *Brown* v. *Riggin,* 94 id. 560; *Rutherford* v. *Morris,* 77 id. 397; *Freeman* v. *Easly,* 117 id. 317; *Campbell* v. *Campbell,* 130 id. 481; *Myatt* v. *Walker,* 44 id. 485; *Trish* v. *Newell,* 62 id. 196; *Schneider* v. *Manning,* 121 id. 376; *Greene* v. *Greene,* 145 id. 264.

The real question submitted to the jury, however, is not whether the party had sufficient mental capacity to comprehend and transact ordinary business, but did he, at the time of making the instrument purporting to be his will, have such mind and memory as enabled him to understand the particular business in which he was then engaged. (1 Redfield on Wills, 123-4; *Campbell* v. *Campbell, supra; Greene* v. *Greene, supra; Stevens* v. *Van Cleave,* 4 Wash. C. C. 262; *Harrison* v. *Rowan,*

3 id. 580). If he did,—if he was able to remember who were the natural objects of his bounty, recall to mind his property, and make disposition of it understandingly, according to some purpose or plan. formed in his mind,—he was possessed of testamentary capacity, and with such capacity, uninfluenced improperly by others, he may make valid testamentary disposition of his estate. *Campbell* v. *Campbell, supra.*

The condition of the testator's mind at the time of the execution of the will is the real subject of inquiry. Proof of his condition prior and subsequent to that time is competent only as it tends to illustrate the mental capacity of the testator when making the testament; and facts proved, whether anterior or subsequent, depend for their probative force upon the clearness and certainty with which they tend to demonstrate the condition of mind and memory at the time of the execution of the proposed will. It would necessarily follow, that if a man uniformly exercised judgment and discretion in respect of affairs requiring equally great mental capacity with the making of the will, he should be presumed to have sufficient capacity to make the same; and therefore, if it be found that the decedent had capacity to transact ordinary business affairs, the presumption would arise that he was capable of doing any act requiring no greater capacity. (*Greene* v. *Greene, supra.*) The converse of this proposition is not, however, true. Men, ordinarily, have contemplated the ultimate disposition of their effects, and when they enter upon the preparation of their last will the matter has already taken shape and form, and it may require a much less degree of mental capacity to intelligently give effect to the purpose already formed, than would be required to protect themselves against the cupidity of others, or to rationally contract, or transact ordinary business. Hence it can not be said, as a matter of law, that because incapable of transacting ordinary business a person is therefore incapable of making testamentary disposition of his estate. (*Greene* v. *Greene, supra; Har-*

*rison* v. *Rowan, supra.*) It follows, necessarily, as want of capacity to transact ordinary business will not, in all cases, establish want of testamentary capacity, that the contestants would have the right to show, if they could, that the testator was in such mental condition as to be incapable of disposing of his property understandingly. The restriction placed by the court upon the examination was therefore erroneous.

All who have had means of observation are permitted to testify concerning the existence and measure of capacity, so far as it may tend to shed light upon the matter at issue, and may give their opinion touching the testator's mental capacity, based upon such observation. The knowledge acquired by actual observation of the handwriting, or capacity, disposition and peculiarities of others, can not be correctly said to be mere opinion. It approaches to knowledge, and is so, as far as the imperfection of our faculties will permit those things to be known. The strongest indications of mental weakness are often found in appearances and acts, incapable of reproduction, and yet sufficient to carry conviction to an intelligent observer, so that, as the jury have not had the means of observation themselves, it becomes impossible to properly represent to them the condition, otherwise than through the impressions made upon those having opportunities denied to them. The weight or effect of such opinions will necessarily depend upon the means of knowledge of the witness, and the facts upon which they are based, possible of delineation, and the capacity of the witness to correctly interpret what he has observed. It is everywhere, therefore, held, that the facts upon which the opinion is predicated may be gone into, either to sustain and give force to the opinion or to discredit it, and the opinion will be entitled to much, little or no weight, depending upon the facts upon which it is predicated, and the intelligence and character of the witness. *Roe* v. *Taylor,* 45 Ill. 485; *Upstone* v. *The People,* 109 id. 175; *American Bible Society* v. *Price,* 115 id. 623; *Harrison* v. *Rowan, supra;*

*Beaubien* v. *Cycotte,* 12 Mich. 450; *Clary* v. *Clary,* 2 Ired. 87; *Grant* v. *Thompson,* 4 Conn. 203; *Dumas' Appeal,* 27 id. 192; *Clapp* v. *Fullerton,* 34 N. Y. 190; *Stackhouse* v. *Horton,* 15 N. J. Eq. 202; *Shaler* v. *Bumstead,* 99 Mass. 112; *Robinson* v. *Adams,* 62 Me. 369.

Objection is made to the ruling of the court in giving the second and third instructions, and the refusal of the ninth offered by plaintiffs in error. We are of opinion that there was no substantial error in this ruling. What we have said in considering the foregoing points is applicable, and need not be repeated. See, also, in this connection, 1 Jarman on Wills, 105; Redfield's Am. Cas. 28, 29; *Guild* v. *Hull,* 127 Ill. 523; *Wilbur* v. *Wilbur, supra.*

Complaint is also made to the giving of the fifth instruction for proponents. While the instruction is objectionable, that it is not based upon the evidence in the case,—certainly not as to all the contestants,—and therefore should not have been given, the general principle announced, with proper limitations, finds ample support. 1 Jarman on Wills, 104; 11 Am. and Eng. Ency. of Law, 154, note 1.

For the errors indicated, the decree of the circuit court will be reversed, and the cause remanded for further proceedings.

*Decree reversed.*