HELEN M. TAYLOR *et al.*

*v.*

MARY O. COX *et al.*

220:75 Fed 492

*Filed at Springfield October 30, 1894.*

1. WILL—*expressions by testator of intention to change.* The expression by a testator, at the time of executing a will and afterwards, of a desire or purpose to change it, does not show the will to be incomplete or impair its validity, the language of the will itself being, in such case, authoritative.

2. SAME—*the test of testamentary capacity.* If a testator has capacity to transact ordinary business he is presumed capable of making a will; but if he cannot do this, it does not follow, as a proposition of law, that he cannot make a will, and an instruction which makes such capacity the test states the rule too strongly.

3. SAME—*ability to transact business not always the test.* Cases may exist where a less degree of mental capacity is required to intelligently give effect to a purpose already formed in relation to the disposition of property by will, than is required in the transaction of ordinary business.

4. EVIDENCE—*several related propositions—duty of jury.* In determining several propositions, so related that one must be decided before another can arise, the jury should consider all the evidence legitimately bearing upon each proposition.

5. SAME—*not error to apply evidence of a witness to each proposition.* In such case it does, not give the testimony of a witness double force to consider it upon each of the successive propositions, and an instruction, though not well worded, which, fairly applied, means no more than this, is not erroneous.

6. INSTRUCTION—*as to power of disposition under the law—creditors.* An instruction which states a general legal power of the owner of property to dispose of it by will, omitting the qualification that creditors must first be paid, will not be erroneous, in a case where no creditors are complaining, and it is not shown there are any.

7. SAME—*need not repeat propositions.* An instruction, having once stated as part of its hypothesis that the testator must be of sound mind and memory, need not repeat that proposition, the first statement being a qualification of the whole instruction.

8. SAME—*as to relative weight of expert witnesses.* An instruction that the testimony of men and women of good common sense is worth more, on the question of testamentary capacity, than that of physicians, is properly refused, as invading the province of the jury.

9. WITNESSES—*subsequent exclusion of testimony of one incompetent.* The admission of the testimony of the executor of a will, if error at all, is cured by its subsequent exclusion, it appearing he did not testify to any fact really controverted.

10. TRIAL—*opening and closing, in contest of will.* The burden of establishing the validity of a will being, in the first instance, on the proponents, they are entitled to open and close the case.

APPEAL from the Circuit Court of Fulton county; the Hon. JEFFERSON ORR, Judge, presiding.

Messrs. C. D. HENDRYX, and Mr. W. M. CROSTHWAIT, for the appellants :

The court could not repair the injury to contestants caused by the improper admission of testimony, by instructing the jury to disregard the same. *Peck* v. *Cooper,* 13 Bradw. 27; *Railroad Co.* v. *Winslow,* 66 Ill. 219; *Insurance Co.* v. *Rubin,* 79 id. 402.

The correct test is, was the testatrix competent to transact the ordinary business of life. *Trish* v. *Newell,* 62 Ill. 204; *Yoe* v. *McCord,* 74 id. 33.

Any impairment that prevents a person from reasoning, and from correctly understanding cause and effect in ordinary business affairs, although the point of absolute imbecility has not been reached, incapacitates him from making a will. *Campbell* v. *Campbell,* 130 Ill. 466; *Meeker* v. *Meeker,* 75 id. 260.

Parties litigant, in any and every case, have a right to have every proposition raised by the pleadings properly submitted to the jury, if there is any evidence in the record tending to prove said theory, although the circumstances may be contradicted strongly by positive evidence. *McDonald* v. *People,* 126 Ill. 52; *Insurance Co.* v. *Pulver,* id. 332; *Bible Society* v. *Price,* 115 id. 630; *Evans* v. *Dickey,* 117 id. 262.

It was error to refuse the contestants the right to open and close the argument, because the burden of proof was on them. *Carpenter* v. *Calvert,* 83 Ill. 63; *Wilbur* v. *Wilbur,* 129 id. 397; *Pendley* v. *Eaton,* 130 id. 71; *Harvey* v. *Ellithorp,*

26 id. 418; *Colwell* v. *Boyer*, 75 id. 517; *Kent* v. *Mason*, 79 id. 541; *Railroad Co.* v. *Bryan*, 90 id. 127; *Bank* v. *St. John*, 17 Wis. 162.

Mr. JACOB BAILY, Mr. DAVID CHAMBERS, and Mr. JOHN A. GRAY, for the appellees:

Where there is a conflict in the testimony, this court will not reverse the decree of the lower court, if the evidence of the successful party, when considered alone, is clearly sufficient to sustain the verdict. *Moyer* v. *Swigert*, 125 Ill. 262; *Long* v. *Long*, 107 id. 210; *Bible Society* v. *Price*, 115 id. 623.

If the jury have been fairly and correctly directed in their investigation, their finding of fact, approved by the chancellor, should stand, unless the verdict is palpably against the preponderance of the evidence. *Green* v. *Green*, 145 Ill. 271.

When evidence is improperly admitted, but the court can see it would not have changed the result with the jury, the judgment will not be reversed on account of such improper testimony. *Ritter* v. *Schenk*, 101 Ill. 387; *Railroad Co.* v. *Rung*, 104 id. 641; *Jackson* v. *People*, 126 id. 139.

If it appears that some improper testimony has been admitted or improper instructions given, still, if the legitimate evidence in the case fully sustains the verdict the judgment will not be reversed. *Carpenter* v. *Davis*, 71 Ill. 395; *Shevalier* v. *Seager*, 121 id. 566; *Watson* v. *Wolverton*, 41 id. 241; *Pahlman* v. *King*, 49 id. 266; *Hardy* v. *Keeler*, 56 id. 152.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a bill in chancery, brought by Helen M. Taylor and Effie Rawalt, against Mary O. Cox and others, to contest the will of Harriet Cheyney, who died in Fulton county, March 25, 1893. The will bears date February 26, 1893, and was duly admitted to probate March 29, 1893, letters testamentary being issued to Albert B. Tompkins, the executor therein named.

The testatrix, at the time of her death, was the owner of two hundred and forty acres of land in Fulton county, and she left her surviving, as her heirs-at-law, her three daughters, viz., the two complainants, and defendant Mary O. Cox. The will provides for a division of the testatrix's personal estate, not required for the payment of debts and funeral expenses, equally among her three daughters, and devises her real estate as follows, viz.: forty acres to the testatrix's daughter Helen M. Taylor for life, with remainder in fee to her children, one hundred and fifty acres to her daughter Mary O. Cox for life, with remainder in fee to her children, and fifty acres to her daughter Effie Rawalt for life, with remainder in fee to her children, with the proviso that, in case of the death of her children before their mother, her share is to revert to the testatrix's heirs-at-law. Power is given to the executor to sell and convey any portion of the testatrix's real estate not disposed of by the will.

The bill attacks the will on three grounds : (1) that at the time of its execution the testatrix was not of sound mind and memory, and was incapable of making any just or proper disposition of her estate, or of understanding the business in which she was engaged ; (2) that the execution of the will was procured by Mary O. Cox and her husband by undue influence ; and (3) that the will was never completed to the satisfaction of the testatrix.

Answers and replications were duly filed, and an issue whether the writing mentioned in the bill and answers was and is the last will and testament of Harriet Cheyney, deceased, being submitted to the jury, a verdict was returned that it was her last will and testament, and a decree was thereupon entered dismissing the bill at the complainants' costs. To reverse that decree the complainants have now appealed to this court.

It is contended, in the first place, that the verdict is contrary to the preponderance of the evidence.

It is conceded that there is no direct evidence in the record tending to prove that the execution of the will was procured by the exercise of undue influence, but it is insisted that there are circumstances proved from which such undue influence should be inferred. Without discussing the evidence at length, it is sufficient to say, that the question of undue influence was submitted to the jury by proper instructions, and we are of the opinion that, so far as that branch of the controversy is concerned, there is no reason for disturbing the verdict.

As regards the allegation of the bill that the will was never completed to the satisfaction of the testatrix, it is conclusively shown that the will was signed and executed by her, and attested by witnesses, in the mode prescribed by law, and this is, in law, conclusive evidence of the fact that it was completed to her satisfaction. Some evidence was given of questions asked by her at the time the will was executed, in relation to her right or power to change the will afterwards if she should see fit, and of some expressions used by her after the will was executed, indicating that she might possibly desire to modify it in some way when her health became better, but questions or expressions of that character, either at the time or after the execution of the will, can have no tendency to show that the will, as executed, was in any legal sense incomplete. They may, perhaps, indicate a desire, or even purpose, to have the will changed; but such desire or purpose, until carried into effect, can not change the will as executed, or impair its legal validity. It is the intention of the testatrix as expressed by the language of the will she has executed, and not her intentions, expectations or desires otherwise expressed, which must be taken as her last will. It will thus be seen that there is an entire absence of evidence tending to show that the will is in any sense incomplete, or that it was not executed precisely as the testatrix intended to have it.

A large number of witnesses were examined upon the question of the testamentary capacity of the testatrix at the time the will was executed, and their testimony, as is not unusual in cases of this character, is to a very considerable degree conflicting, but, after giving it careful consideration, we are of the opinion that it fairly warrants the conclusion at which the jury arrived. It shows that the testatrix, at the time she executed the will, was advanced in years, and was at the time laboring, to a considerable degree, under the physical and mental weakness resulting from disease, but we think the jury were fairly justified in finding that she was able to fully understand and appreciate the business in which she was engaged while undertaking to make final disposition of her property by will. We shall not undertake the useless task of reviewing the evidence in detail, but content ourselves with simply announcing our conclusion, that the verdict is in accordance with the preponderance of the evidence.

Various complaints are made of the rulings of the trial judge in his instructions to the jury, but, after carefully examining all the instructions, we are of the opinion that the law was given to the jury with substantial accuracy, or, at least, that no errors were committed in that behalf of which the contestants of the will can justly complain.

It is insisted that the instruction given by the court at his own instance was erroneous, in that it, in effect, required the jury to consider the testimony of the subscribing witnesses twice, so as to give to the testimony of each twice the effect to which it is properly entitled. In our opinion the instruction, though perhaps not in all respects very felicitously worded, is not obnoxious to the criticism thus made. It held, in substance, that if the jury found that the proponents had shown, by a preponderance of the evidence, that the will was in writing and signed by the testatrix, and attested in her presence by at least two witnesses, and had also shown that it was proven by the same two witnesses that the testatrix was

of sound mind and memory at the time of signing the will, then it was the duty of the jury to again consider the evidence in the case, for the purpose of ascertaining therefrom whether the testatrix, at the time of making the will, was or was not of sufficient mental capacity to knowingly and understandingly transact the ordinary business of life, and whether she then understood the nature of the business she was engaged in, viz., that of disposing of her property; that in determining that question they should take into consideration all the evidence in the case,—the condition of the testatrix, both of body and of mind, and her age, as shown by the evidence,—and after having so considered the evidence, giving to each part of it such weight as they thought it entitled to, if they found, by a preponderance of the evidence, that the testatrix, at the time of making the will, did not have sufficient mental capacity to knowingly and understandingly transact the ordinary business of life and comprehend the nature of the act of disposing of her property, their verdict should be for the contestants, but if they found that the contestants had failed to establish, by a preponderance of the evidence, that she did not have such capacity, their verdict should be for the proponents.

The rule is that, in cases of this character, the burden is on the proponents of the will, in the first instance, to establish, *prima facie*, the validity of the will and the testamentary capacity of the testatrix, but that, upon such proof being made, the burden is shifted so as to entitle the proponents to a verdict, unless the contestants are able to show, by a preponderance of all the evidence, a want of testamentary capacity. (*Wilbur* v. *Wilbur*, 129 Ill. 392; *Carpenter* v. *Calvert*, 83 id. 62.) By the foregoing instruction the court evidently intended to announce and lay down this rule, and the jury were directed, first, to determine whether the proponents had made out a *prima facie* case as required by the rule, and if that question was settled in the affirmative, they were

then to consider all the evidence in the case, for the pur-
pose of determining whether the preponderance upon the
question of testamentary capacity was with the contest-
ants or the proponents, with the further direction, that
if it was not with the contestants the verdict should be
in favor of sustaining the will.

Whenever, in the trial of any case, several proposi-
tions arise which are so related to each other that one
must be decided before another can properly arise, it
is the duty of the jury, in determining each proposition,
to consider all the evidence in the case having any legiti-
mate bearing upon it, and the fact that the testimony of
particular witnesses has a bearing upon each successive
proposition as it arises, and is considered by the jury in
determining each, can not be said to have the effect of
duplicating the weight to be given to their testimony. It
is only making one application of the testimony to the
various questions to which it applies. Here the testi-
mony of the attesting witnesses to the will was entitled
to be considered by the jury in determining, in the first
instance, whether the proponents of the will had made
out a *prima facie* case, so as to throw the burden of prov-
ing a want of testamentary capacity upon the contest-
ants ; and in deciding whether, upon the whole case, the
contestants had shown a want of testamentary capacity
by a preponderance of the evidence, the testimony of the
attesting witnesses was entitled to be again considered.
This was not giving the testimony of these witnesses
double the force to which it was entitled, but only apply-
ing it, in a legitimate manner, to the decision of the sev-
eral questions to which it was applicable.

The instruction, however, held that, to establish tes-
tamentary capacity, it was necessary to show both suffi-
cient mental capacity to knowingly and understandingly
transact the ordinary business of life, and also to com-
prehend the act of disposing of the testatrix's property.
In this respect the instruction was erroneous, as the test

of testamentary capacity thus applied was more stringent than the law justifies. If a testator has capacity to transact ordinary business, the presumption arises that he is capable of doing any act requiring no greater capacity, and therefore capable of making a will. But the converse of this proposition is not true. It can not be said, as a matter of law, that because incapable of transacting ordinary business a person is incapable of making a testamentary disposition of his estate. *Craig* v. *Southard,* 148 Ill. 37; *Sinnet* v. *Bowman,* 151 id. 146.

Complaint is made of the following instruction given at the instance of the proponents:

"The court instructs the jury, as a matter of law, that every person being twenty-one years of age and upward, and of sound mind and memory, has a right to make a disposition of his estate by will, and to so devise his property as to divest those who would otherwise inherit it as his legal heirs, of their interest.therein. Generally, the object of a last will and testament is to enable a testator to devise and distribute his property as to him may seem best, and no next of kin, no matter how near they may be, can be said to have any legal or natural rights to the estate of a testator which can be asserted against the will of the latter. The law of this State has placed every person's estate, over twenty-one years of age, wholly under the control of the owner, and to be devised and distributed by the latter as he may freely choose and direct in any last will and testament made by him. Neither children nor grand-children have any natural rights to the estate of their mother or grandmother which can be asserted against any disposition of said estate which said mother or grandmother may choose to make by will."

It is suggested that this instruction should have been so qualified as to hold that the power of a testator to dispose of his estate by will is subject to the payment of his debts. While such is undoubtedly the rule, none of the parties before the court appear in the character of

creditors, nor does it appear that there are creditors. But even if there were, the contestants are not seeking to enforce their rights, but are asking to have the will set aside, so as to be themselves let in to an equal distribution of the estate of the testatrix as her heirs-at-law. They are therefore in no position to complain of the failure of the instruction to properly recognize the paramount rights of creditors.

It is also insisted that the last proposition of the instruction should have been modified, by adding that such is the law, provided the jury believed, from the evidence, that the testatrix was possessed of testamentary capacity, and was not acting under undue influence, and understood that she had finished her last will and testament. The instruction having once stated, as a part of its hypothesis, that the person making the will was of sound mind and memory, such hypothesis should be understood as qualifying the entire instruction, and it was not necessary to again repeat it. Further than this, the instruction deals in an abstract proposition, which in no way involves the question of undue influence or the want of completeness of the will, and it was entirely proper, therefore, to omit all reference to those subjects.

Several instructions given for the proponents are objected to because they lay down as a test of testamentary capacity on the part of the testatrix, sufficient soundness of mind and memory to know and understand the business in which she was engaged at the time she executed her will, it being claimed that the true test is, ability to transact the ordinary business of life. As has already been shown, ability to transact the ordinary business of life can not, in all cases, be referred to as the true test, as cases may exist where a less degree of mental capacity is required to intelligently give effect to a purpose already formed in relation to the final disposition by a testator of his estate, than would be required in the transaction of ordinary business. *Craig* v. *Southard, supra.*

The contestants also complain of the refusal by the court to give to the jury an instruction asked by them, holding that, while physicians may be able to give a diagnosis of disease more learnedly, yet upon the question whether the disease had, at a given time, reached such a stage that the subject of it was incapable of making a contract or irresponsible for his or her acts, the opinions of his neighbors, if men and women of good common sense, would be worth more than those of medical experts. This instruction was clearly erroneous, and was properly refused. The relative weight to be given to the opinions of medical and non-medical experts can not be determined by any rule of law, although the strong presumption would be that, where both classes of experts are given the same opportunities for observation, the opinions of medical experts would be entitled to the greater weight. But the weight to be given to the opinions of witnesses testifying as experts is always a matter to be determined by the jury from all the circumstances appearing in evidence, and it would be error for the court to instruct, as a matter of law, that the testimony of one class is entitled to greater weight than that of the other.

At the trial, the court, against the objection of the contestants, admitted the testimony of Albert B. Tompkins, the executor named in the will, but afterwards, during the course of the trial, withdrew his testimony from the jury, and it is insisted that the admission of his testimony was prejudicial error, and that such error was not cured by the subsequent withdrawal of his testimony from the consideration of the jury. Tompkins was the person who was employed by the testatrix to draft her will, and his testimony seems to have been confined to a relation of the circumstances attending the drafting and execution of the will, and the conduct, condition and appearance of the testatrix on that occasion, and the same facts, in substance, were testified to by two other witnesses who were present at the time, and they are dis-

puted by no witness. Whether, then, Tompkins was a competent witness or not,—a question in relation to which we express no opinion,—we are unable to see that the admission of his testimony, followed by its subsequent exclusion from the consideration of the jury, could have materially prejudiced the contestants. Substantially the same facts being proved by other witnesses, Tompkins' testimony was merely cumulative as to specific facts about which there was no dispute, so that, if his testimony had remained before the jury, it is difficult to see how it could have materially influenced their action. Under these circumstances, the error in admitting his testimony, if it was an error, was cured by the subsequent order of the court excluding it.

It is finally insisted that the court erred in refusing to give the contestants the right to open and close the case. The burden of establishing the validity of the will being, in the first instance, on the proponents, they were entitled to open and close, and there was therefore no error in that respect. *Rigg* v. *Wilton*, 13 Ill. 15; *Potter* v. *Potter*, 41 id. 80; *Tate* v. *Tate*, 89 id. 42; *Carpenter* v. *Calvert, supra; Wilbur* v. *Wilbur, supra.*

Some other points are made by the contestants, which have been duly considered, and are not found to be well taken or to require further discussion. After carefully considering the record in the light of the arguments presented, we are able to find no material error, and the decree of the circuit court will therefore be affirmed.

*Decree affirmed.*