JOHN JOHNSON et al.

v.

OCDEVIAH JOHNSON et al.

*Opinion filed October 19, 1900.*

1. APPEALS AND ERRORS—*what may be stated in bill of exceptions to raise legal questions only.* If only legal questions, such as the effect of giving or refusing instructions, are intended to be raised on appeal or error, it is proper for the bill of exceptions or certificate of evidence to state that there was evidence tending to support both sides of the case.

2. SAME—*verdict of jury in will case on conflicting evidence has same weight as in suit at law.* The verdict of the jury in a will contest, rendered on conflicting testimony, is entitled to the weight given to a verdict in a suit at law, and will not be set aside on appeal or error unless clearly contrary to the weight of evidence.

3. WILLS—*effect on proponent's prima facie case if one subscribing witness is impeached.* In a will contest, if the defendants introduce the will, the certificate of the oaths of the subscribing witnesses at the time of probate and the testimony of both subscribing witnesses, a *prima facie* case in favor of the will is made out, even though evidence is introduced tending to impeach one subscribing witness.

4. SAME—*"credible" witnesses means "competent" witnesses.* The statute requiring the attestation of a will by two "credible" witnesses means competent witnesses, and their competency is to be tested by the state of facts existing at the time of such attestation.

5. SAME—*impeachment of subscribing witness on contest does not relate back.* If one of the subscribing witnesses to a will is impeached with reference to matters stated in her testimony in a proceeding to contest the will, such impeachment does not relate back to the time the will was executed.

6. INSTRUCTIONS—*when instruction as to rejecting testimony of witness is correct.* An instruction upon the right of the jury to reject the testimony of any witness whom they believe, from the evidence, has sworn falsely to a material matter, is properly framed which makes an exception in favor of such of the testimony as is corroborated by other evidence.

7. SAME—*when failure of instruction to mention one issue is not prejudicial.* An instruction authorizing the jury to find in favor of the will if they believe the testator to have been of sound mind and memory is not prejudicial to the contestant although one of the issues raised is undue influence, if other instructions call the attention of the jury to the fact that they must find there was no exercise of undue influence in order to sustain the will.

8. EVIDENCE—*presumption of sanity is in proponent's favor—burden of proof.* If the proponents have made out a *prima facie* case in favor of the validity of the will the law adds the legal presumption of the testator's sanity, and the contestant has the burden of proving unsoundness of mind by a preponderance of evidence.

WRIT OF ERROR to the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

The original bill in this case was filed on July 20, 1899, and the amended bill was filed on January 8, 1900. The object of the bill, as originally filed and as thus amended, is to set aside the will of Thomas Johnson, deceased, upon the alleged grounds, that the said testator was not of sound mind and memory when he made his will, and that he was under undue influence exercised over him by the defendants in error, Ocdeviah Johnson, Jesse L. Johnson, and Phœbe H. Swigart. The bill also alleges that there were but two subscribing witnesses to the will, and that they or either of them did not believe at the time of the signing of the will, that the testator was of sound mind and memory, and that, by reason thereof, said will was not properly nor lawfully probated, and that it was not the last will of the deceased. The bill was answered by the defendants thereto who are the defendants in error here. The issues of fact were submitted to the jury, who returned a verdict finding the will in question to be the last will and testament of Thomas Johnson, deceased. A motion for a new trial was made and overruled, and a decree was entered, dismissing the bill, and for costs, against the plaintiffs in error. The present writ of error is sued out for the purpose of reviewing the decree thus entered by the court below.

The will bears date October 14, 1897. Thomas Johnson died on February 9, 1898. The will was filed for probate, and admitted to probate, on March 15, 1898, and Isaac F. Houseman, one of the defendants in error herein, was appointed executor. John Johnson, Silas Johnson,

Emily Swigart and Sarah Ann Zimmerman, who are plaintiffs in error here, and complainants in the bill below, are the children of Thomas Johnson, deceased, by his first wife. The defendants in error here, who are the defendants below, are Ocdeviah Johnson, the widow of the deceased and his second wife, and Jesse L. Johnson and Phœbe H. Swigart, his children by his second wife. Defendant in error, A. Davis, is a legatee under the will.

The will devises to the plaintiffs in error $25.00 each; to Sarah Ann Zimmerman, in addition to the $25.00, five large silver spoons; and to defendants in error, Phœbe H. Swigart $500.00, and to Jesse L. Johnson $25.00 and the testator's gold watch; and to A. Davis his gold-headed cane; and the residue of his estate to defendant in error, Ocdeviah Johnson, the widow. By the will I. F. Houseman, defendant in error, is appointed executor. There are two subscribing witnesses to the will, to-wit, Minnie Derring and Orie Wood. The attesting clause, under which the names of the subscribing witnesses are written, is as follows: "The above and foregoing instrument was at the day of the date thereof signed, sealed, published and declared by the said Thomas Johnson as and for his last will and testament, and we, in his presence and in the presence of each other, have, at the request of the said Thomas Johnson, signed our names as witnesses thereto, believing the said Thomas Johnson, at the time of so subscribing our names as witnesses as aforesaid, of sound mind and memory."

The three following issues were submitted to the jury: "*First*—Was the writing read in evidence, purporting to be the last will and testament of Thomas Johnson, deceased, the last will and testament of the said Thomas Johnson or not? *Second*—Was the said Thomas Johnson, at the time of the execution and attestation of the said writing read in evidence, purporting to be the last will and testament of the said Thomas Johnson, of sound mind and memory? *Third*—Was there any undue influence ex-

ercised over the said Thomas Johnson that resulted in the making of said will?"

The jury returned the following answers to the said questions, to-wit: "*First*—That the writing read in evidence, purporting to be the last will and testament of said Thomas Johnson, deceased, was the last will and testament of him, the said Thomas Johnson, deceased. *Second*—And that, at the time of the execution and attestation of the same, the said Thomas Johnson was of sound mind and memory. *Third*—And that said will was not the result of any undue influence exercised over him, the said Thomas Johnson." The verdict of the jury was as follows: "We the jury find the will in question to be the last will and testament of Thomas Johnson, deceased."

The certificate of evidence or bill of exceptions contains none of the evidence which was introduced upon the trial of the cause; but it contains the instructions that were given for the plaintiffs in error, and those that were given for the defendants in error, and also the instructions asked by the plaintiffs in error which were refused, and the instructions asked by the plaintiffs in error which were modified, and then given as modified.

The certificate of evidence or bill of exceptions certifies as follows: "The proponents of the will gave in evidence on their behalf testimony tending to prove the issues in their favor; thereupon, the complainants gave in evidence on their behalf testimony tending to prove the issues in their favor; that is to say, that the evidence of the case was conflicting. The complainants also gave in evidence evidence that tended to impeach the character of Annie Derrig, one of the witnesses to the will, for truth and veracity. The above and foregoing was all the evidence in the case offered by either party." Subsequently, an additional record was filed in this court showing an amendment to the certificate of evidence; and it appears from this amendment, "that the proponents in said cause offered in evidence the will in said cause to-

gether with the certificate of oath of witnesses to said will at the time of the first probate thereof, and that the said will and said certificate were offered and introduced in evidence by the defendants on the trial of said cause." By the amended certificate of evidence "the court further finds, that the proof in said cause shows that said will was executed in strict compliance with all the legal formalities and in the manner required by the statutes of this State; and that the evidence offered and given in said cause only tended to impeach the reputation of the subscribing witness, Minnie Derring, after the 14th day of October, 1897, and after the date on which said will was probated in the probate court of DeWitt county, Illinois."

TIPTON & TIPTON, for plaintiffs in error.

HERRICK & HERRICK, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The certificate of evidence in this case sets forth twenty-eight instructions given for the defendants in error, the proponents of the will; also thirty instructions given for the plaintiffs in error, the contestants of the will; also six instructions asked by the plaintiffs in error, but refused, and then modified, and given as modified, both the instructions as originally drawn and the instructions as modified being set forth in the bill of exceptions. After thus setting forth the instructions given as originally drawn, and the instructions given as modified, the bill of exceptions contains the following: "To the ruling of the court in giving the proponents' instructions and each of them, to the ruling of the court in refusing to give complainants' instructions that are modified, and the modifications of the same, to which modifications the complainants by their counsel then and there ex-

cepted." The bill of exceptions then sets forth twenty-
one instructions asked by the plaintiffs in error which
were refused by the court below. After setting forth
these instructions the bill of exceptions contains the fol-
lowing: "Which the court refused to give; to which re-
fusal to give said instructions, and to the refusal to give
each and every one of them, the complainants then and
there excepted."

If we were disposed to apply a strict, technical rule
of interpretation to the bill of exceptions or certificate
of evidence in this record, we would be obliged to hold
that the only alleged error, of which the plaintiffs in error
are entitled to complain, is the refusal by the trial court
to give the instructions asked by plaintiffs in error, which
were refused. There is really in the certificate of evi-
dence no exception to the ruling of the court in giving
the instructions of the proponents of the will, or to the
ruling of the court in refusing to give the instructions
for the contestants of the will which were modified. The
complainants by their counsel excepted to the modifica-
tions made of the instructions which were modified, but
did not except to the giving by the court of the modified
instructions after they were so modified. It is not alto-
gether clear, that the bill of exceptions, in the respects
thus indicated, is not subject to the charge of ambiguity,
uncertainty and omission. We have held that a bill of
exceptions is not to be considered as a writing of the
judge, but as a pleading of the party alleging the excep-
tion. Like any other pleading it is to be construed most
strongly against the party preparing it, who must be re-
sponsible for all uncertainty and omission in his bill of
exceptions. (*Garrity* v. *Hamburger Co.* 136 Ill. 499). Inas-
much, however, as it was evidently the intention of coun-
sel for the plaintiffs in error to except to the ruling of
the court in giving the instructions which were given for
the defendants in error, and in refusing to give the in-
structions of the plaintiffs in error which were modified,

and in giving them as so modified, and inasmuch as the language used may, by a liberal interpretation, be construed as embodying such exception, we will proceed to consider some of the alleged errors assigned upon the record.

*Second*—The certificate of evidence in this case shows, that evidence was introduced, tending to support the issues, both in favor of the proponents of the will, and also in favor of the contestants of the will. We have recently held, that it is proper for a bill of exceptions to state, that the evidence tends to prove the facts, and that, in such case, legal questions alone, such as the giving or refusal of instructions, are intended to be raised on appeal or writ of error. (*Costly* v. *McGowan*, 174 Ill. 76). It also appears from the bill of exceptions that the evidence in the case was conflicting, and, where such is the fact, the verdict of a jury, in a case contesting a will in chancery under the statute, has the same force and effect, as are given to a verdict in a case at law under a like state of facts. Where the testimony is conflicting, and it is not clearly against the weight of the evidence, the verdict of the jury must be held to be conclusive. (*Entwistle* v. *Meikle*, 180 Ill. 9).

*Third*—It is objected, in behalf of the plaintiffs in error, that some of the instructions, given by the court below for the defendants in error, took away from the jury the right to pass upon the formalities, attending the signing or execution of the instrument, offered in evidence as the will of the deceased testator. Strictly construed these instructions can hardly be regarded as erroneous, in view of the holding of this court, that the question, whether a will has been executed with all the proper formalities, is a question of law, and not a question of fact to be considered by the jury. (*Roe* v. *Taylor*, 45 Ill. 485; *Graybeal* v. *Gardner*, 146 id. 337; *Harp* v. *Parr*, 168 id. 459). But counsel for plaintiffs in error contend that, in this case, plaintiffs in error were injured by these

instructions, for the reason that there was evidence tending to impeach the veracity of one of the subscribing witnesses.

The two subscribing witnesses to the will were Minnie Derring and Orie Wood. The defendants in error introduced upon the trial below the will, and the certificate of the oaths of the subscribing witnesses to said will at the time of the first probate thereof. They also introduced the testimony of both of the subscribing witnesses to the will, in addition to the will itself and the certificate above mentioned. Undoubtedly, this testimony made a *prima facie* case in favor of the validity of the will. We have held that, if a will has been probated in the county court, a certificate of the evidence of the subscribing witnesses will be *prima facie* proof of the validity of the will in a proceeding in chancery which attacks the probate of the will. Where, in addition to this certificate, the testimony of one of the subscribing witnesses is also introduced, sustaining the validity of the will, a *prima facie* case in favor of its validity is unquestionably made out. (*Holloway* v. *Galloway*, 51 Ill. 159; *Buchanan* v. *McLennan*, 105 id. 56; *In re Page*, 118 id. 576; *Slingloff* v. *Bruner*, 174 id. 561; *Entwistle* v. *Meikle, supra; Harp* v. *Parr, supra*).

The theory of counsel is, that one of the subscribing witnesses to the will, Minnie Derring, was impeached, and that, therefore, the *prima facie* case, made by the defendants in error, was overthrown. The contention here made is, that the will must be attested by two credible subscribing witnesses under the provisions of the statute, and that, one of those subscribing witnesses having been impeached, the will is to be regarded as having only one subscribing witness, and, therefore, as not having been executed according to law. The first objection to this contention is, that the expression "credible witness," as used in the statute, means "competent witness." In other words, a credible witness, within the meaning of

the Statute of Wills, is a competent witness. (*Fisher* v. *Spence*, 150 Ill. 253; *In the matter of Noble*, 124 id. 266; *Harp* v. *Parr, supra*). The next objection to such contention is, that the competency of attesting witnesses to a will is to be tested by the state of facts existing at the time of such attestation. (*Fisher* v. *Spence, supra; Slingloff* v. *Bruner, supra*).

So far as we can gather from the language of the instructions, and from the meager statements made in the bill of exceptions or certificate of evidence, the subscribing witness, Minnie Derring, who testified in this case in favor of the validity of the will, is said to have made certain statements out of court contrary to the statements, which she made when testifying as a witness in this proceeding begun for the purpose of setting the will aside. These contradictory statements are alleged to have been made on July 23, 1899, three days after the filing of the original bill in this cause. If it were true, that this alleged contradiction of the evidence of Mrs. Derring weakened, or destroyed, the effect of her testimony as given upon the trial of this proceeding, there were yet remaining the will and the certificate of the testimony of the subscribing witnesses at the original probate of the will in the county court, and the testimony of the other subscribing witness, Orie Wood, sustaining the validity of the will. Even, therefore, if the testimony of Minnie Derring was thrown out, sufficient evidence was introduced by the defendants in error, outside of her testimony, to make a *prima facie* case in favor of the validity of the will under the authorities above quoted.

No attempt was made to show the incompetency of the subscribing witness, Minnie Derring, at the time when she signed the attestation clause attached to the will, or at the time when the will was admitted to probate in the county court, or to show that she was at either of these dates unworthy of belief. If she was so far impeached as to be regarded unworthy of belief, her impeachment had

reference to a date long subsequent both to the execu-
tion and to the original probate of the will. It cannot be
contended that if, in a chancery proceeding to set aside
a will, one of the subscribing witnesses is impeached, the
impeachment extends back to the date of the execution
of the will, so as to make it a will with only one sub-
scribing witness, instead of two. To establish such a
rule as this would be to open the door to fraud and cor-
ruption. It would place it in the power of a subscribing
witness, long after the will was admitted to probate, to
retract and undo what had already been established by
the testimony of such witness. In the recent case of
*Thompson* v. *Owen*, 174 Ill. 229, this court referred with ap-
proval to the case of *Abbott* v. *Abbott*, 41 Mich. 540, where
one of the attesting witnesses to a will failed to remem-
ber, and could not, therefore, testify, that all the formal
requisites, required by the statute to be observed, had
been complied with, and quoted from that case the fol-
lowing statement: "But we know of no rule of law which
makes the probate of a will depend upon the recollection,
or even the veracity, of a subscribing witness. The law,
for wise and obvious reasons, requires such instruments
to be executed and attested with such precautions as will
usually guard against fraud. But if the forgetfulness or
fraud of a subscribing witness can invalidate a will, it
would be easy in many cases to use such artifices or
corruption as would render the best will nugatory." In
*In the matter of Noble*, 124 Ill. 266, it was held that the
mere fact, that an attesting witness to a will has pleaded
guilty to an indictment for forgery, will not render him
incompetent to testify on the probate of the will, although
by statute a conviction of crime may be shown as affect-
ing the credibility of the witness. Here, however, no
attack was made upon the credibility of Mrs. Derring,
so far as her testimony given upon the probate of the
will in the county court is concerned. The contradictory
statements, alleged to have been made out of court, are

charged to be contradictory merely of her testimony as given upon the trial of this case, that is to say, in a suit in chancery brought to set the will and its probate aside.

The court, however, did give, in behalf of the plaintiffs in error, one or more instructions to the effect that, if the jury believed from the evidence that any witness made statements out of court on or about July 23, 1899, contrary to what such witness had sworn to upon the trial, upon any material matter, then these contradictory statements would tend to impeach the witness, and the jury would be justified in rejecting her testimony, except in so far as she should be corroborated by other testimony. The instructions, thus given by the court, are objected to by counsel for plaintiffs in error, because they qualified the right of the jury to reject the contradicted testimony by making an exception in favor of such testimony so far as it was corroborated by other evidence. Such an instruction as this has been frequently endorsed by the decisions of this court. (*City of Sandwich* v. *Dolan,* 141 Ill. 430; *Miller* v. *People,* 39 id. 457; *Bowers* v. *People,* 74 id. 418).

*Fourth*—Complaint is made, that one of the instructions given for defendants in error called the attention of the jury to the question, whether or not the deceased, Thomas Johnson, was at the time of the execution of the will of sound mind and memory, and authorized the jury to find a verdict in favor of the defendants in error, in case they should find from the evidence that at that time he was of sound mind and memory. The objection, made to the instruction, is that it did not call the attention of the jury to the other issue in the case, namely, whether the deceased was induced to make the will by undue influence, exercised over him by his second wife and her two children. In support of this objection, reference is made to the case of *Costly* v. *McGowan, supra.* In that case, however, it did not appear, that the jury were instructed to make any finding at all upon the question of

whether there had been an exercise of undue influence, but their attention was directed exclusively to the question, whether the testator was of sound mind and memory at the time of the execution of the will. Here, however, the record shows, that a number of instructions were given on behalf of the contestants of the will, which told the jury that, if they should find from the evidence, that undue influence had been used, it was their duty to declare the instrument introduced in evidence not to be the last will and testament of Thomas Johnson, deceased. Among these instructions was the twenty-fifth instruction, given for the plaintiffs in error upon the trial below, which used the following language: "If the jury find from all the evidence that undue influence was used as defined in these instructions, the jury will find that said paper is not the last will and testament of Thomas Johnson." In view of the fact that the attention of the jury was called frequently to the necessity of finding whether or not there had been an exercise of undue influence, the plaintiffs in error suffered no injury from the instruction complained of, which called attention only to the question whether the testator was of sound mind and memory or not. All the instructions are to be taken together and regarded as one charge; and it is impossible in this case, that the jury should not have understood they were to pass upon the issue as to the exercise of undue influence.

*Fifth*—Complaint is also made of an instruction given for the defendants in error, which told the jury that, if at a certain time about a month prior to the execution of the will, the testator was mentally competent to transact the ordinary business affairs of life, then the presumption of law is, that such mental competency continued, and that he was mentally competent to transact the ordinary business affairs of life when he executed the will, and that, unless the contestants showed by a preponderance of the evidence that the testator was not mentally competent to make his will, or was under the undue in-

187—7

fluence of his wife, or of his children, Jesse L. Johnson
and Phœbe H. Swigart, or some one or more of them, on
the last named date, then their verdict should be for the
defendants.   An instruction substantially the same in
form as the one here complained of, was given in *Holloway*.
v. *Galloway, supra*.   In that case it was said, that a per-
son, seeking to establish a will, must prove the testator
to have been of disposing mind and memory at the time
he made the will, and not at some anterior period; but
it was also said, that the instruction there given could
have worked the plaintiffs in error no prejudice for the
following reasons: "The defendants had put in evidence,
as the statute authorizes, the testimony of the subscrib-
ing witnesses given when the will was admitted to pro-
bate, and this was *prima facie* evidence of its validity.
This testimony raised a presumption of the competency
of the testator, which would be valid until disproved by
counter testimony.   It placed upon the plaintiffs in error
the burden of showing the incompetency of the testator,
by proof sufficient to overcome the *prima facie* case made
for him, and this is all that was required by the forego-
ing instruction.   *   *   *   The instruction then really left
the parties in the same position before the jury they would
have occupied if it had not been given.   It merely shifted
upon complainants the burden of proof in case sanity
had once been established, and that burden was already
upon their shoulders, through the testimony of the sub-
scribing witnesses."   So, here, a *prima facie* case had al-
ready been made by the introduction of the will and the
certificate of the subscribing witnesses at the date of its
probate, and also by the testimony of one of the subscrib-
ing witnesses given in this proceeding.   This having been
done, and contradictory testimony having been produced
tending to show want of necessary testamentary capac-
ity, the defendants in error, asserting the validity of the
will, were entitled to prevail, unless the contradictory
testimony was sufficient to overcome or neutralize the

effect, not only of the affirmative testimony given in favor of the will, but also to overcome or neutralize the presumption arising from the general rule of law, that all men are presumed sane until the contrary is proven. "In weighing the conflicting proofs the party supporting the will is entitled to the benefit of this presumption." (*Carpenter* v. *Calvert*, 83 Ill. 62; *Taylor* v. *Pegram*, 151 id. 106). The law presumes every man to be sane until the contrary is proved, and the burden of proof rests upon the party alleging insanity. The proponents of the will must make out a *prima facie* case in the first instance in the manner already stated. The burden of proof is then upon the contestants to prove the allegations of their bill by a preponderance of the evidence. "The law throws the weight of the legal presumption in favor of sanity into the scale in favor of the proponents." (*Egbers* v. *Egbers*, 177 Ill. 82; *Entwistle* v. *Meikle, supra; Taylor* v. *Cox*, 153 Ill. 220). If, therefore, the instruction now under consideration was technically incorrect, it is impossible, in view of what has been said, that any injury from the giving of it could have resulted to the plaintiffs in error.

So far as the instructions asked by the plaintiffs in error and refused by the court are concerned, it is sufficient to say, that the substance of the propositions contained in such refused instructions, so far as they were sound, are embodied in instructions which were given.

After a careful examination of all the instructions as found in the record, we are unable to discover any such error as would justify us in reversing the decree of the court below. Accordingly, the decree of the circuit court is affirmed.

*Decree affirmed.*