# W. W. VAN VLEET *et als.*, RESPONDENTS, *v.* A. S. OLIN *et als.*, APPELLANTS.

ACTION TO DETERMINE ADVERSE CLAIM TO LAND. In an action to determine an adverse claim to land lying on both sides of a river, defendant asked an instruction to the jury, to which the whole case was submitted, "that if they found from the evidence that plaintiff had shown a right only to that portion of the land on the north side of the river, he was not entitled to recover with respect to that located on the south side," which instruction was refused: *Held,* clearly error.

RELIEF UNDER SEC. 254 OF PRACTICE ACT. In an action to determine an adverse claim to land, under Sec. 254 of the Practice Act, a court has no right to decree that defendant has no title to or right in land to which plaintiff fails to show a possession or title in himself.

EQUITY CASE BEFORE JURY. If an equity case is treated as an ordinary action at law and submitted to a jury as such, and the court considers itself bound and controlled by the verdict as in an action at law, each party has the same right with respect to instructions as if it were a case at law.

INSTRUCTIONS TO JURY IN EQUITY CASE. In a purely equity case, when the judge simply impannels a jury to find specific facts, it seems that neither party has a right to ask the court to instruct the jury, the judge not being controlled by the verdict.

RIGHT TO JURY IN EQUITY CASE. In a purely equity case, the calling of a jury is a matter of discretion with the judge and not a matter of right in the parties.

QUERY. Can the parties in an action to determine an adverse claim to land, under Sec. 254 of the Practice Act, demand a jury trial as a matter of right?

Appeal from the District Court of the Second Judicial District, Ormsby County.

The land in controversy is in Ormsby County, and consists of the southeast quarter of the northwest quarter, and the southwest quarter of the northeast quarter of section number seven, in township number fifteen north, in range number twenty-one east, according to United States survey. Carson River runs through it in a general direction from southwest to northeast, leaving nearly two-thirds of the trail on the southerly side of the river.

The action was originally commenced in the name of W. W. Van Vleet, James Casey, and E. P. Tucker, as plaintiffs, against A. S. Olin, Thomas Andrews, John Doe, and Richard Roe, defendants. During the course of the trial in the Court below, the names of E.

C. Clarke and Geo. W. Moore were added as plaintiffs, by amendment. The answer was filed by defendant Olin.

The other facts are stated in the opinion.

*Jonas Seeley*, for Appellants, filed a brief, devoted chiefly to points raised on the record, but not passed upon by the Court. As to the refusal of the instruction, set forth in the opinion, he contended that it was manifestly error.

*Clayton and Clarke*, for Respondents. No brief on file.

By the Court, LEWIS, J.

This action was brought under Section 254 of the Code of Procedure, which declares that "an action may be brought by any person in possession by himself, or his tenant, of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate or interest."

The land, the title to which is here in controversy, consists of eighty acres, lying on both sides of the Carson River, in the County of Ormsby, and seems to be valuable only for the purpose of mill sites.

The plaintiffs allege in their complaint that they are the owners and in possession of the premises described; that the defendant is claiming some title or interest therein adverse to them, and conclude with the prayer that the defendant be "made to answer and show his title, and that it be declared null and void as against their right and title." The defendant denies all the allegations of the complaint, and claims title to the premises in himself; and also alleges that he is, and was at the time of the commencement of this action, in the actual possession thereof.

Upon the trial, the plaintiff Van Vleet, testifying on his own behalf, said that the notice posted by himself and those interested with him in the location read as follows: "We, the undersigned, claim this water right, commencing at this point of rocks and extending up the river to the mouth of the cañon." When again testifying as to what was done toward securing possession of the premises, he goes on to say: "We did not mark out the metes and

bounds. We did not claim any definite amount of land. There was nothing ever done except the posting of the notices and the making of the improvements to indicate the extent of our claim. We simply claimed the mill site and water privilege." And it was conceded that all the improvements made by the plaintiffs were on the north side of the river; that nothing was done by them on the south side, except some work towards the building of a dam, which it was then intended to throw across the river. The defendant introduced evidence to prove that his title to the premises was superior to that of the plaintiffs; that he claimed from persons who located the land prior to the location by the plaintiffs. He also showed a survey of the land, and a compliance with the requirements of the law of 1865, prescribing the manner of acquiring possessory title to public land in this State. (Laws of 1864–5, page 343.)

As a jury was impanneled to try the issues raised by the pleadings, the defendant asked the Court to charge them, that if they found from the evidence that the plaintiffs had shown a right only to that portion of the land on the north side of the river, they were not entitled to recover with respect to that located on the south side. This instruction the Court refused to give, and in so refusing clearly erred. The Court certainly had no right to decree that the defendant had no title to or right in land to which the plaintiffs had failed to show a possession or title in themselves.

Whether the plaintiffs or defendant had the superior right or title to the premises was the only question which the evidence presented for determination.

Both parties did something towards acquiring a title. The plaintiffs may have shown a superior right to that portion of the premises located on the north side of the river, whilst the defendant possessed the better right on the south side. The land was divided into two parcels by the river, and the proof shows that all the plaintiffs' improvements were on the north side of the stream, and that the boundaries were not marked or designated. Indeed, the plaintiff Van Vleet himself testified that he simply claimed the mill site (which was on the north side) and the water privilege. That being the case, the defendant certainly showed a good title to that

portion of the land lying on the south side. It could not, therefore, have been decreed that he had no right or title to that part of the premises, nor should the instruction referred to have been refused.

But it may be claimed that this is purely an equity case, and, therefore, that the refusal to give a correct instruction asked, or a misdirection of the jury, is not an error which will authorize the reversal of the judgment, because a court of equity is not bound or controlled by the verdict in such case. We are inclined to believe that the parties could, as a matter of right, have claimed a jury to try their title to the premises in this case. But whether they could or not, the Court below treated the case all through as an ordinary action at law, and charged the jury that they were the exclusive judges of the facts, of the credibility of the witnesses, and of the weight of evidence. In rendering judgment, also, it seemed to consider itself bound and controlled by the verdict of the jury as in an action at law. When the whole case is in such manner submitted to the jury, and the Court considers itself controlled by the verdict, certainly each party has the same rights with respect to instructions that he has in any trial at law. If the whole case is given to the jury, it should certainly be fairly submitted and the law correctly given to them.

In a purely equity case, when the Judge simply impannels a jury to find specific facts, perhaps neither party has a right to ask the Court to instruct the jury, for the Judge is in nowise controlled by the verdict, and he may, if he chooses, entirely disregard it, and render a decree in accordance with his own conclusions from the evidence. The calling of a jury in such case is purely a matter of discretion with the Judge, and not a matter of right in the parties. When, however, the action is tried as an action at law, and so treated by the Court and parties, it should, at least, be fairly submitted to the jury, and the law correctly stated to them.

Judgment reversed, and a new trial ordered.

JOHNSON. J., having been of counsel in the Court below, did not participate in the above decision.