ELIZABETH PETEFISH

*v.*

HENRY BECKER.

*Opinion filed October 24, 1898—Rehearing denied December 14, 1898.*

1. WILLS—*a jury's verdict as to mental capacity not lightly disturbed.* The verdict of a jury finding that the testator did not possess a sound and disposing mind, upon evidence for each party which, if considered alone, would sustain a verdict for either, will not be disturbed on appeal, in the absence of errors of law.

2. EVIDENCE—*contestant is entitled to same latitude as proponent in proving testator's mental condition.* The proponent having been permitted to introduce evidence as to the testator's mental capacity covering a period prior and long subsequent to the execution of the will, the contestant may introduce evidence covering same period.

3. SAME—*contestant may call for particular actions of testator on cross-examination.* Upon cross-examining a witness called by the proponent to testify that the testator possessed a sound and disposing mind, the contestant may call for any particular act or conduct of the testator observed by the witness, in order that the jury may properly determine the value of the witness' opinion.

4. TRIAL—*cross-examination must be confined to matter brought out in chief.* It is not error to sustain objections to questions asked on cross-examination which do not relate to any matter brought out upon the examination in chief.

5. INSTRUCTIONS—*instructions should have reference to the issues.* Instructions should have reference to and must be construed in view of the issues to be tried and the proofs in support thereof.

6. SAME—*when instruction in will contest is properly refused.* An instruction in a will contest which seeks to take from the jury the right to consider the evidence in support of the issue of insane

delusions, leaving as the sole test of testamentary capacity the ability to transact business, is properly refused.

7. SAME—*an instruction in substantially the language of the statute is proper.* An instruction in a will contest that if the jury believe, from the evidence, that at the time of executing the paper in evidence the testator was not of sound mind and memory then the jury should find the paper is not his will, is properly given.

APPEAL from the Circuit Court of Cass county; the Hon. HARRY HIGBEE, Judge, presiding.

MORRISON & WORTHINGTON, for appellant.

MILLS & McCLURE, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

On September 29, 1882, Conrad Becker made his last will and testament, by which he disposed of all his estate. He bequeathed to his daughter, the appellant, $3000, and the residue of his estate he devised to his wife for life, with a right to a home to the appellant and remainder to her and the heirs of her body. The testator died in March, 1896, leaving surviving him his widow, his son, the appellee, and his daughter, the appellant. Subsequently the widow died. The will was duly admitted to probate. The son, the appellee, filed his bill to the October term, 1897, of the Cass county circuit court, under section 7 of chapter 148 of the Revised Statutes, to contest the validity of the will, and made the appellant and her only child, Rowena Petefish, defendants thereto. The appellant was sole administratrix with the will annexed. The bill alleges that at the time of the execution of the instrument, and for a long time prior thereto, the said Conrad Becker was not of sound mind and memory, and was possessed of and controlled by various insane delusions. Answers were filed and issue out of chancery made, and trial before a jury had in pursuance of the statute, and a verdict was returned finding the instrument was not the will of Conrad Becker, deceased. A motion

for a new trial was made and a decree entered setting aside the will. The proponent prosecutes this appeal.

Conrad Becker was a German by birth, and came to this country about 1847. In 1859 he engaged in farming, and bought, raised and sold stock. He was prosperous in business and accumulated a considerable amount of money. Prior to 1859 he was married to a woman with one child,—a son,—and as issue of their marriage there was born a son and two daughters. One of the daughters died without issue.

The proponent called about twenty witnesses, one of them a brother, another the family physician, numerous persons who had worked for the testator at various times or who had been tenants of his, persons who had been trading with him in buying and selling stock, others who had borrowed money of him, and others who had transactions of various kinds with him. These witnesses testified as to his condition of mind covering a period long prior to the execution of the will and to a period long subsequent thereto, and from their acquaintance and business transactions with him they testified that he was thoroughly competent to transact business, entirely capable, and, in their opinion, of sound mind. The contestant called an equal number of witnesses, among them a brother and a sister, others who had business transactions with him or proposed to have business transactions with him, and others who were tenants or had worked for him in various capacities and who knew him well, who all testified that at times he was morose, sullen, cross and abusive; that when things went wrong on the farm or in business his conduct was exceedingly abusive and violent towards his wife and son, he frequently denying the paternity of the latter and at other times praising him; that prior to the execution of the will the son, having arrived at manhood, paid attention to a young woman to whom the testator objected, and on the son marrying her he became exceedingly indignant and very

much angered towards the son, and frequently denounced him and denied his paternity. These witnesses called by the contestant, from their intercourse with the testator, their observation of his conduct and manner and their business transactions with him, testified that on frequent occasions when they saw him he was not of sound and disposing mind.

Where there is such conflict in the testimony as here, the question of whether the testator was of sound and disposing mind is one peculiarly within the province of the jury. The evidence in favor of the proponent of the will and the evidence of the contestant alike would sustain a verdict, when standing alone, in favor of either. In such case, the verdict of the jury and the action of the chancellor in overruling the motion for a new trial, where the jury and chancellor have had an opportunity to observe the witnesses and their manner and conduct on the stand, are entitled to great weight, and the verdict in such case will not, on the facts, be disturbed by an appellate tribunal. *Long* v. *Long*, 107 Ill. 210; *American Bible Society* v. *Price*, 115 id. 623; *Hill* v. *Bahrns*, 158 id. 314; *Harp* v. *Parr*, 168 id. 459.

A witness called by the proponent was interrogated, on cross-examination by counsel for appellee, as to the treatment by the testator of his family, and was asked, "Is it not true that he jumped on them and abused them without any cause whatever?" This question was objected to and the objection overruled, to which appellant excepted. The witness answered: "It seems that when anything went wrong about the machine he would take his spite out on his own children when it was not their fault. He would curse them and call them bad names." The witness ran a threshing machine, made settlements and transacted business with the testator, and expressed the opinion that he was of sound mind. On cross-examination the contestant had a right to call for any conduct or action of the testator observed by the witness, that

the jury might properly determine the value of the opinion of the witness as to the testator being of sound mind. It was not error to overrule this objection.

Contestant called as a witness a brother-in-law of the testator, who testified in chief to conversations had with and declarations made by the testator, and of his actions towards his family. On cross-examination this question was asked: "What was the habit of the old man as to industry and attending to his business?" To this the contestant objected, which objection was sustained and the proponent excepted. It was not a proper cross-examination of any matter brought out in chief, and it was not error to sustain the objection thereto.

A witness called by the contestant was being examined in chief, and the witness stated that at one time he and some others were returning from town with the testator, and when they reached the testator's gate the testator went in, and some one laughingly called the attention of the witness to the testator, who, he says, "was making faces and slapping himself and making maneuvers," etc. The witness was then asked in chief, "I want you to state whether or not there was anything else, up to 1880, that was strange and unusual in his conduct." To this proponent objected, but the objection was overruled and proponent excepted. The question was answered by the witness detailing other actions and conduct of the testator, and from all the actions and conduct observed by the witness he expressed the opinion the testator was not of sound mind. The actions of the testator detailed by the witness just before the question objected to was asked, excited in the mind of the witness doubt as to the sanity of the testator, and he having detailed what was to him apparently strange and unusual conduct, was in that connection asked the question which was objected to. In the connection in which it was asked it was therefore a request for a statement of any other strange or unusual conduct on the part of the testator observed

by the witness from which he formed an opinion as to his mental condition. It was not error to overrule the objection.

Objection was made to a question asked by appellee of a witness who testified to a conversation had within four or five years of the time of the trial, to which proponent objected. The objection was overruled and the witness allowed to answer. The utmost latitude was allowed proponent in her examination and cross-examination of witnesses, and the period covered by the witnesses when interrogated as to the condition of mind of testator embraced the time long prior to the execution of the will and up to a period shortly before his death. The witnesses for the contestant covered the same period of time. Such evidence of the condition of the mind of the testator before and subsequent to the making of the will was proper to be submitted to a jury to enable them to determine his condition of mind at the time of its execution. The question for the jury was, was the testator of sound and disposing mind at the time of the execution of the will. The proponent being permitted to introduce evidence covering the period before and long subsequent to the execution of the will, it was not error to allow contestant to introduce evidence covering the same period.

It is urged by the proponent that the court erred in modifying the third instruction given at her request. That instruction is as follows:

"You are further instructed that to sustain the allegation that Conrad Becker was laboring under an insane delusion in regard to the legitimacy of his son, Henry, it is not sufficient to show that he had a suspicion to that effect or that his suspicion was not well founded. Although he may have had groundless and unjust distrust of his wife's fidelity, yet such doubt does not establish a condition of lunacy or a lack of testamentary capacity, [unless it appears, from a preponderance of the evidence, that such distrust caused him to execute a will he

would not otherwise have made.] The right of the testator to dispose of his estate depends neither on the justice of his prejudices nor the soundness of his reasoning. He may do what he will with his own, and if there be no defect of testamentary capacity, the law gives effect to his will though its provisions are unreasonable or unjust."

The modification is enclosed in brackets. There is no evidence in this record tending to prove that the testator distrusted his wife or suspected her of infidelity to him. He cohabited with her up to the time of his death, and left her for life the greater portion of his property, and as asked the instruction might well have been refused. If the testator utterly without cause or reason, and without expressing distrust of the fidelity of his wife, doubted the paternity of his son, and from that cause alone disinherited him when he was one of the natural objects of his bounty, it might well be said that he did not then know who were the natural objects of his bounty; and if he was in such condition of mind that he did not know the actual objects of his bounty, and such condition caused him to make a will he would not have otherwise made, then he was not of sound and disposing mind. (*Craig* v. *Southard*, 148 Ill. 37; *Campbell* v. *Campbell*, 130 id. 466; *Rutherford* v. *Morris*, 77 id. 397; *Trish* v. *Newell*, 62 id. 196; *Burkhardt* v. *Gladish*, 123 Ind. 338.) Instructions should have reference to and must be construed in view of the issues to be tried and the truths in support thereof. (*Martin* v. *People*, 13 Ill. 341; *Chicago and Alton Railroad Co.* v. *Dillon*, 123 id. 570.) The modification was not error.

Proponent insists that the refusal of instruction No. 5, asked by her, was error. It in substance is, that if the jury believe that Becker executed the paper in question in the presence of the two subscribing witnesses, said witnesses subscribing the paper in his presence as such witnesses, and that at that time he was mad at his son, Henry, and often stated the said Henry was not his son, and that he repudiated his relationship with his brothers

and sisters, and that said statements were in fact untrue, and that he abused his wife and was ill-natured to his family and all others, yet if they further believe that at the time he executed said paper and caused the same to be attested by the subscribing witnesses he was capable of attending to his ordinary business, (if he did transact such business,) then he was capable of making a valid last will, and the fact (if it is a fact) that he made such statements or expressed such opinions, and that the said statements were untrue and his opinions unfounded, does not, in law, amount to insane delusions such as would destroy his mental capacity to make a valid last will. This instruction did not take into consideration the requirement of the law that the testator must have sufficient intelligence to appreciate his relations to those having natural claims upon his bounty, and was in this regard vicious. (*Craig* v. *Southard, supra; Rutherford* v. *Morris, supra.*) It also sought to take away from the jury the right to consider evidence relating to insane delusions, and to make the sole test of testamentary capacity the ability to transact business. *Nicewander* v. *Nicewander*, 151 Ill. 156; *Brace* v. *Black*, 125 id. 33; *American Bible Society* v. *Price*, 115 id. 623.

Proponent urges it was error to give the fourth instruction asked by the contestant. It was:

"If the jury believe, from a preponderance of the evidence in this case, that at the time of executing the paper in evidence Conrad Becker was not of sound mind and memory, then the jury should find the paper in question is not his will."

This instruction is substantially in the language of the statute, and it was not error to give it. *Keithley* v. *Stafford*, 126 Ill. 507; *Town of Fox* v. *Town of Kendall*, 97 id. 72.

We find no error in the record, and the decree of the circuit court of Cass county is affirmed.

*Decree affirmed.*