[No. 1694.]

IN THE MATTER OF THE ESTATE OF MARY ABEL, DECEASED, J. D. ABEL, CONTESTANT AND RESPONDENT, *v.* W. T. HITT, PROPONENT AND APPELLANT.

1. WILLS—TESTAMENTARY CAPACITY—EVIDENCE. Evidence *held* to show that a testatrix was mentally incompetent to execute a will.

2. SAME—VALIDITY—UNDUE INFLUENCE—EVIDENCE. Evidence *held* to show that a testatrix in making her will acted under undue influence.

3. APPEAL — REVIEW — JUDGMENT ON CONFLICTING EVIDENCE. A judgment rendered on conflicting evidence will not be disturbed on appeal, where there is substantial evidence to support it.

4. TRIAL—CONDUCT OF JURY—SEPARATION. The fact that some of the jury in a civil case, during the trial, but before they were instructed and placed in custody of an officer to consider the verdict, became separated and were not in the custody of the officer, is not ground for reversal, where it does not appear that any juror was improperly influenced, nor that any effort was made to prejudice the rights of the complaining party, nor that any of his rights were prejudiced by the separation.

APPEAL from the District Court of the Fourth Judicial District of the State of Nevada, Elko County; *George S. Brown*, Judge.

Proceeding by W. T. Hitt to probate the will of Mary Abel. From a judgment in favor of J. D. Abel, contestant, denying the probate, proponent appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Mack & Farrington, E. J. L. Taber*, and *C. B. Henderson*, for Appellant:

I. Whatever the influences were in this case, they did not

affect or change Mrs. Abel's purpose. If the influence was not strong enough to overcome her purpose and destroy her free agency, there is no undue influence within the meaning of the law. (*In re Hess's Will*, 31 Am. St. Rep. 670, 674, 675; Rood on Wills, 175, 189; *In re Kaufman*, 59 Am. St. Rep. 179.)

II. The fact that Mrs. Abel was using morphine to allay pain, and that it caused stupor or sleepiness, is no proof that she was affected by it at the time of the making of the will. (*In re Glocker's Will*, 2 N. Y. 97; *First* v. *Wheeler*, 12 Atl. 613; 28 Ency. Law, 84.)

III. The court erred in stating in the twenty-fourth instruction that the burden of showing that Mary Abel was of sound and disposing mind at the time of the execution of the will rested upon the proponent of the will. The instruction places the burden of proof on the proponent through the trial. The proponent should make out a *prima facie* case, then the burden shifts to the contestant. The sanity of the testator is always to be presumed. (Hughes, Instructions to Juries, 696, and cases cited; *Leach* v. *Burr*, 188 U. S. 510; *Estes* v. *Montgomery*, 36 Am. St. Rep. 228, 234; *Higgins* v. *Carlton*, 92 Am. Dec. 689; *McCullock* v. *Campbell*, 5 S. W. 592; 11 Greenl. Ev. 689; *In re Silverthorn*, 32 N. W. 289; *Blough* v. *Parry*, 43 N. E. 563; *McCoon* v. *Allen*, 17 Atl. 820; *Allen* v. *Griffin*, 35 N. W. 21; *Jones* v. *Jones*, 33 N. E. 479; *Wilbur* v. *Wilbur*, 21 N. E. 1076; *Craig* v. *Southard*, 43 N. E. 393; *In re Motz's Estate*, 69 Pac. 294; *Farleigh* v. *Kelley*, 72 Pac. 758; *Gessel* v. *Baugher*, 60 Atl. 481; *Glass* v. *Glass*, 103 Ind. 1013; *Credelle* v. *Credelle*, 51 S. E. 629; *In re Hawley's Will*, 89 N. Y. 805; *Woodman* v. *Ill. T. & S. B.*, 71 N. E. 1102.) The burden of proof of undue influence is on the contestant. (Rood on Wills, 189; Gardner on Wills, 179; *In re Nelson's Will*, 89 N. Y. 868.)

IV. The evidence shows beyond any doubt that the jury were not kept together as the court ordered, and that they were allowed to separate frequently. A presumption of injury arises from the fact of an improper separation of the jury during the trial, and it is a ground for a new trial, unless the presumption is rebutted. (70 Ency. Law, 1219;

*Ehrhard* v. *McMee*, 25 Pac. 193; *Robinson* v. *Donahoo*, 25
S. E. 491.)

V.   A verdict in favor of a party whose conduct was cal-
culated to improperly influence the jury upon a material
question should be set aside and a new trial granted, even
though no objection was taken.  (*Preston* v. *Mutual Life Ins.
Co.*, 71 Fed. 467; *Bullard* v. *B. & M. R. R.*, 10 Am. St. Rep.
367; *Stoudenmire* v. *Harper*, 1 South. 857; *Zube* v. *Weber*, 34
N. W. 268.)

VI.   The court erred in giving the twenty-sixth instruc-
tion because it is a one-sided definition of undue influence.
No amount of persuasion is sufficient to constitute undue
influence, provided the act of testatrix is the act of a free
agent; it is not sufficient to constitute undue influence that
a person do or forbear an act which he would not have done
or forborne had it not been for the inducing.   The free
agency must be destroyed, and the act of testatrix virtually
must be the act of another person or persons, before undue
influence can be said to exist.   Because of the two reasons
just given, the instruction, proponent submits, is misleading
and incomplete, and does not state fairly the elements which
constitute undue influence.

*Cheney, Massey & Price*, for Respondent:

I.   Counsel asked the trial court, and now asks this court,
to reverse the order denying the motion for a new trial upon
the grounds of misconduct of Massey, one of the counsel for
contestant.   The question of misconduct in this instance is
presented by the affidavit of counsel for the appellant setting
up certain statements made by Massey during the argument
to the jury, and objection to the argument of counsel for
appellant and an exception thereto on appellant's behalf.
Upon the presentation of this question to the trial court we
contended, and now contend, that this question cannot be
presented either to the trial court or this court upon affidavit;
that the procedure prevailing in this jurisdiction and all
other jurisdictions under code practice requires that questions
of this kind shall be made by bill of exceptions and carried
into the statement; that this alleged error is not an irregu-

larity in the proceedings of the court, jury, or adverse party, or any order of the court, or abuse of discretion by which either party was prevented from having a fair trial, and is not covered by the first, second, third and fourth subdivisions of Comp. Laws, 3290; that it can be raised by affidavit under section 3291 of the Compiled Laws of this state. Our contention that the only method of presenting this question to the trial or this court is under the last clause of Comp. Laws, 3291—upon statement on motion for a new trial or upon an exception entered in the minutes of the court and settled by the court at the trial, and the use of the minutes of the court on the hearing of the motion for a new trial as provided by section 3292 of the Compiled Laws; that it could not be presented by any other method.

II. The appellant alleges as one of the grounds for reversal the misconduct of the jury. The alleged error is based upon the affidavits of three of the counsel for the appellant. The affidavits show that during the progress of the trial, but not after the jury was instructed and placed in the custody of an officer to consider the verdict, some of the jury separated and were without the custody of the officer. No pretense or claim is made by the appellant that the jury was allowed to separate after the instructions and while they were considering their verdict. It is not shown by the affidavit affirmatively or inferentially that the separation of the jury at the times stated prejudiced the rights of the appellant. No act or thing is charged against the jury, or any member of the jury, or any other party, during such separation, from which it could be inferentially drawn that the jury had been tampered with, or that an effort had been made to prejudice the rights of appellant.

III. Appellant complains that the court erred in instructing the jury that the burden of showing that Mary Abel was of sound and disposing mind and memory at the time she signed the will rested upon the appellant, and have sought to impress the court by a citation of a large number of authorities that the court erred in giving this instruction. This matter was thoroughly discussed upon the trial of this case, and we desire to call the attention of the court to the statute of the State of Nevada, and to this record, and the large

number of authorities that have held contrary to the contention of appellant. The first section of the act concerning wills, approved December 19, 1862, and which has remained unchanged from that date to the present time, provides that any person over eighteen years of age, of sound mind, may by last will dispose of all his real estate and personal estate subject to the payment of his debts. (Comp. Laws, 3071.)

V. By the express language used in this section the court must be satisfied upon the proof taken when the court hears the case, and the court must be satisfied by the verdict of the jury before the decree can be entered. This question leaves the ultimate question of the admission of the will to probate to the court. The verdict of the jury is not binding on the court. If, upon the consideration of the verdict the court is not. satisfied, without motion for a new trial or otherwise, the court can disregard the verdict of the jury. In other words, under the rule of the statute the verdict of the jury upon an issue of fact in the contest of a will is of the same force and effect and of no greater force and effect than the verdict of a jury in chancery. The rule prevailing in equity cases will be found in Comp. Laws, 3278. The right to a jury under the provisions of our civil practice act in chancery cases is discussed by the supreme court of this state in the following cases: *Lake* v. *Tolles*, 8 Nev. 285; *Van Vleet* v. *Olin*, 4 Nev. 95; *Duffy* v. *Moran*, 12 Nev. 97. We especially call the attention to the language of this court in *Duffy* v. *Moran*, wherein it is stated that in chancery proceedings, when there are contested questions of fact, the chancellor may, and ofttimes should, call a jury, but the verdict is merely advisory and only to satisfy his conscience. If it is satisfactory, he can and should adopt it and file his findings and decree accordingly; that until the verdict has been sanctioned by the court it is no proof of any fact except that it was actually rendered in the case. The verdict, independent of the adoption of it by the court, can establish nothing in the case. The general rule is tersely stated that in most of the states the verdict of the jury has the force and effect of a verdict in an ordinary action, and in some of the states the verdict is merely advisory to the court, and may be accepted or rejected in whole or in part. (16 Ency.

Pl. & Pr. 1042, 1043.) Under the rule of law making the verdict of juries merely advisory in equity cases, it has been held that claims of error in instructions and alleged misconduct were errors without prejudice, the reason being that the jury in a case of this character is only an advisory adjunct to the court, its verdict not binding the trial court or appellate court. (*Peck* v. *Stanfield*, 12 Wash. 101; *Collins* v. *Fidelity Trust Co.*, 73 Pac. 1121.) In those jurisdictions where the verdict of a jury is merely advisory in a will contest, as it is in this state, the same rule prevails. (*Hudson* v. *Hugan*, 42 Pac. 701; *Bryant* v. *Pierce*, 70 N. W. 297; *In re Jackman's Will*, 26 Wis. 104; *Chafin Will Case*, 32 Wis. 569; *Wright* v. *Jackson*, 59 Wis. 584; *Loughney* v. *Loughney*, 87 Wis. 101; *Pay* v. *Vanderford*, 154 Mass. 498; *Newell* v. *Homer*, 120 Mass. 277; *Cummins* v. *Cummins*, 1 Del. 423.)

By the Court, SWEENEY, J.:

This is an appeal from a judgment and order denying a motion for a new trial rendered in the District Court of the Fourth Judicial District of the State of Nevada, in and for the County of Elko, in a will contest wherein W. T. Hitt, proponent and executor of the estate of Mary Abel, deceased, was successfully sued by J. D. Abel, contestant and respondent in this action.

It appears from the record that Mary Abel died on or about the 13th day of March, 1904, at Elko, Nevada, leaving an estate in said county consisting of real and personal property. At the time of her death she was 67 years of age, and had been married to her husband, now 83 years of age, since 1873. There were no children born to them. The appellant, W. T. Hitt, four days after the death of the deceased, filed in the said District Court of Elko County what purported to be the last will and testament of Mary Abel, and duly petitioned the court to probate the same. Within due time the husband, respondent in this action, filed a contest against the probate of said will, in which it was alleged that the purported will was not the last will and testament of the deceased, because as alleged at the date said will was signed the deceased was mentally incompetent to make a will; that the execution of said will was procured by undue influ-

ence of E. C. McClellan and his wife, witnesses thereto, and
of Margaret Sheldon, a sister of the deceased.  Upon the
issues made by the petition for probate and the objections
filed by the contestant, the cause came on regularly for trial
on the 12th day of January, 1905, before the court, with the
aid of a jury.  Numerous witnesses were called and sworn,
the cause was argued, the jury instructed, and under instruc-
tions given by the court returned a general verdict in favor
of the contestant.

Nine special issues were submitted to the jury, with
instructions to return answers to the same.  They were as
follows:

(1) Did Mary Abel sign the instrument which has been
offered in evidence as her last will and testament?  A. Yes.

(2) Did Mary Abel sign said instrument in the presence
of E. C. McClellan and Eleanor A. McClellan?  A. Yes.

(3) Did Mary Abel, at the time she signed said instru-
ment, if she did sign it, say it was her will?  A. Yes.

(4) Did E. C. McClellan and Eleanor A. McClellan sign
said instrument in the presence of Mary Abel, as witnesses
thereto?  A. Yes.

(5) Was Mary Abel of sound mind and disposing memory
at the time the proposed will was signed?  A. No.

(6) Was Mary Abel acting under undue influence at the
time the proposed will was made?  A. Yes.

(7) Did Mary Abel, at the time of signing the alleged will,
if she did sign it, have sufficient mental (G. S. B.) capacity
to recollect the property she intended to dispose of?  A. No.

(8) Did Mary Abel, at the time of signing the alleged will,
if she did sign it, have sufficient mental capacity to recol-
lect the people who were the natural objects of her bounty?
A. No.

(9) Was any of the property mentioned in the proposed
will the separate property of Mary Abel at the time of her
death?  A. Yes.

Upon the rendition of the verdict by the jury, judgment
was entered by the court decreeing that the instrument was
not the last will and testament of Mary Abel, deceased, and
refusing to admit the same to probate.

Appellant urges that a new trial should be granted,

assigning many alleged errors, a number of which we deem harmless, even though conceded to be errors, but which apparently counsel have abandoned, and for these reasons we will not refer to them in this opinion, confining our attention solely to the main alleged errors urged. Appellant contends that the testimony was insufficient to support the verdict as to undue influence, and contends that there is no testimony tending to support the special finding that Mary Abel was acting under undue influence when she executed the will.

A careful review of the testimony in this case leads us to conclude that the court and jury had ample evidence, though conflicting in certain respects, upon which to base their verdict. It appears from the testimony that the deceased was under the constant care and attention of physicians, and confined to her home for more than six months prior to the execution of the will; that her condition was so precarious as to require the care of a number of nurses; that the deceased was an elderly woman 67 years of age, weighing over two hundred pounds, and during the latter months of her sickness was almost constantly under the influence of opiates for the purpose of allaying the intense pain to which she was subjected; that the disease with which she was afflicted had caused her limbs to become so swollen that it became necessary to split them open with a surgeon's knife. Her husband, the contestant, who was assisting in her care during her last sickness, and was almost constantly in attendance upon her, and who had lived with her for nearly forty years, testified that her mind was apparently blank at times, and that she was unable to recognize him, and during the latter months of her life her mental condition was failing and very bad all the time; that the expression on her face was very simple, at times idiotic, and that her mind seemed a blank.

Another witness who rented a small house from the deceased adjoining her house and who during January, the month the alleged will was executed, saw the deceased two or three times a day, testified that deceased was insane on the 15th of January, and that on the date the will was executed she was no better mentally or physically; that at the time the will was executed and for some time prior thereto she was always in

a stupor, and used language which indicated that she was
mentally unbalanced.    This evidence is supported by the tes-
timony of Mrs. Keith, Mrs. Haywood, and Mrs. Watkins, and
contradicted to a limited extent by a few reputable witnesses
for the appellant.    Other witnesses in behalf of the propo-
nent testified in effect that while she was ailing physically
and mentally, yet she had a clear mind and disposing mem-
ory; but from all the testimony on both sides it appears
plain that the mental condition of deceased was very weak
at the time she executed the will, and that the jury and judge
who passed judgment in this case were thoroughly warranted
in finding that at the time of the execution of the alleged will
Mary Abel was not of sound mind and of disposing memory.

It appears from the testimony that the purported will was
prepared by E. C. McClellan, a notary public, some three or
four days before the date of the execution of the same; that
Mr. McClellan and his wife were the only persons present at
the time of the execution of the will, and that Mrs. McClellan
had urged the deceased to make a will; that the McClellans
were intimate friends of Mrs. Sheldon, who is charged in
part with the procurement of this will in her favor; that the
McClellans lived about ninety feet from the home of Mrs.
Abel, and were social and intimate friends and called daily
on the deceased; that on the day when the will was executed
Mrs. McClellan waited with Mrs. Sheldon until the nurse and
Mr. Abel had left the house, and there was no one present at
the home save Mrs. Sheldon, who, during the time the will
was being executed, was out on the porch and had Mr.
McClellan bring over the typewritten will which he had
prepared for execution; that there was no one present at the
time of the execution of the will save Mr. McClellan and his
wife, who signed as witnesses to said will; that there was
not a word changed in the typewritten will by Mrs. Abel,
and the signature to said will discloses a signature which, if
not connected with the will itself, would be impossible to
recognize as the signature of Mary Abel; that the deceased
was either so weak mentally or physically that she did not
know how to spell her own name correctly.

Many exhibits were introduced showing the signature of
Mary Abel to checks and letters which were submitted to the

jury for comparison with that of the signature attached to
the purported will. These checks and signatures were written
at different periods just prior to the execution of the will.
It appears from the evidence that it was her custom to sign
in a plain, firm hand, and all her signatures prior to a couple
of months before the execution of the will were in a firm,
plain hand; that her signatures to different exhibits written
after January 7, 1904, evidenced physical, if not mental, decay,
and that the jury assumed from the signature to the will,
which did not even spell her name properly, omitting one of
the letters in the last name, that physically and mentally she
was in such a condition that she did not know what she was
doing and did not possess the requisite ingredients of mind
necessary to dispose of her property. The evidence sub-
mitted to the court and jury upon the mental weakness of
the deceased was sufficient for them to have found, notwith-
standing the conflicting testimony, that the deceased was
incompetent and of unsound mind at the time of the execution
of the will.

On the day the will was executed, Mr. McClellan testified
that he was home all day, and that his wife had informed him
that the respondent and the nurse had left the Abel house;
that he knew that Mrs. Abel had been sick for six months
before she signed the will, and that he had prepared the will
upon the information of, and solicitation by, his wife, Mrs.
McClellan, who the evidence discloses was the intimate friend
of Mrs. Sheldon, the beneficiary under the will; that he had
this typewritten will prepared for several days before it was
signed; that he was intimately acquainted with Mrs. Sheldon,
who often visited his home, and nearly always talked about
the proposed will; that Mrs. Sheldon was at the Abel house
when he went there, and on the front porch of said house
when he left after the alleged execution of the will; that he
never told Mr. Abel, the contestant, anything about the will;
that Mrs. Abel never gave him any instructions about the
contents of the will, and that after it was executed he deliv-
ered it to Mrs. Sheldon; that at the time of the execution of
the alleged will Mrs. Abel said nothing about any of her
other relatives.

This condition of affairs existing, and the circumstances

under which the will was prepared, and the execution of the same, were facts which also warranted the court and jury in finding that Mary Abel at the time the alleged will was executed was acting under undue influence, and that she did not have sufficient mental capacity to recollect the property she intended to dispose of, nor to recollect the people who were the natural objects of her bounty, and was otherwise mentally incompetent to execute a will. There are many respectable authorities holding that in will contest cases, when the question as to the correctness of the verdict in view of the evidence is raised in the appellate court, the verdict will not be set aside unless there is clearly a legal insufficiency in the evidence to sustain the verdict. (*Smith* v. *Henline*, 174 Ill. 184, 51 N. E. 227; *Harp* v. *Parr*, 168 Ill. 459, 48 N. E. 113; *White* v. *Cole*, 47 S. W. 759; *Coates* v. *Semper*, 82 Minn. 460, 85 N. W. 217; *Crossan* v. *Crossan*, 169 Mo. 631, 70 S. W. 136; *In re Watson*, 131 N. Y. 587, 30 N. E. 56; *In re Voorhis's Will*, 125 N. Y. 765, 26 N. E. 935; *In re Elmer's Will*, 88 Hun, 290, 34 N. Y. Supp. 406; *Robinson* v. *Robinson*, 203 Pa. 400, 53 Atl. 253.)

And particularly has this been held to be the rule when the trial court has declined to interfere. (*Petefish* v. *Becker*, 176 Ill. 448, 52 N. E. 71; *In re Allison's Estate*, 104 Iowa, 130, 73 N. W. 489; Gardner on Wills, p. 332.)

However, in this case the record discloses no such showing for appellant. But this court has repeatedly held that, where there is substantial evidence to support a judgment or verdict, even though the evidence to a degree be conflicting, it will not disturb such verdict or judgment, and in the present case we believe the transcript discloses that such substantial evidence exists, and hold accordingly.

Appellant further urges as reversible error misconduct of the jury. It appears from the affidavits of three of counsel for appellant that during the progress of the trial, but not after the jury were instructed and placed in the custody of an officer to consider the verdict, some of the jury became separated, and were not in the custody of the officer. It is not claimed by the appellant that the jury was allowed to separate after the instructions of the court had been given and while they were considering their verdict, nor is it shown

or claimed by said affidavits that at the times said jurymen were separated or out of the custody of the officer that any juryman had been tampered with or improperly influenced, or at all, or that any effort had been made to prejudice the rights of appellant, nor is it claimed or maintained that because of such separation any of the rights of appellant were prejudiced, nor because of this separation that they were damaged in any way. While there are some authorities, in criminal cases, which hold that this would be proper ground for reversal, we are unable to find any which would make this reversible error in a civil case, under the circumstances of the present case, where it is not claimed that because of a mere separation of the jury any injury or damage was suffered by appellant. When, during the trial of a case in the lower court, the court enters an order that the jury remain together, they should do so, and the jurymen should not be allowed to become separated, even before the instructions are given by the court and the case put into their hands to consider their verdict; but, under the circumstances of the present case, where no damage is alleged to have arisen from such separation, nor where it is not shown that the jurors were tampered with or improperly influenced, or at all, and none of the circumstances indicate any rights were violated or damage suffered, we do not believe it to be reversible error. (17 Ency. Law, 2d ed. 1227, 1228.)

The authorities cited by appellant are not in point, for the reason that those cases wherein judgment had been reversed, because of the separation of the jury, applied to cases where the jury had retired after being instructed by the court to consider the verdict. In another case cited by appellant a judgment was reversed because of an improper separation during the trial of a criminal action, wherein, during the progress of the trial, a juryman became separated from the jury, and without the custody of the sheriff; the court holding that the mere fact of his separation in such a case, as distinguished from a civil case, was ground for reversal, unless the presumption is sufficiently rebutted that the juror was not improperly influenced or tampered with, or that the appellant's rights were prejudiced or suffered harm. (17

Ency. Law, 2d ed. 1227.)    At any rate, in the present case, it being an action wherein a verdict of a jury is merely advisory, the court was not bound by the verdict.    The court in the present case could either have accepted the findings of the jury, and accepted its verdict, or set them aside and acted on its own judgment, as it saw fit.    In the present case the court saw fit to accept the verdict and findings of the jury and entered judgment against the proponent.    (Comp. Laws, 2803, 2805, 3038, 3067; 16 Ency. Pl. & Pr. 1042-1043.)

This same observation with reference to the jury being improperly influenced or prejudiced is equally applicable to the error assigned by appellant's counsel of certain improper language and argument alleged to have been used by Attorney Massey, one of the chief counsel for contestant, in his argument before the jury.    The court evidently, in passing its own judgment, did not consider the language complained of sufficiently harmful or injurious to warrant a judgment otherwise than he rendered. ' (*Lake* v. *Tolles*, 8 Nev. 285; *Duffy* v. *Moran*, 12 Nev. 97; *Van Vleet* v. *Olin*, 4 Nev. 95, 97 Am. Dec. 513.)

In other jurisdictions where the verdict of a jury is merely advisory in a will contest, as it is in the present case under consideration, the rule prevails, as in this state, that the verdicts of juries are merely advisory, and can be totally disregarded or accepted as a trial court decides.    (*Bryant* v. *Pierce*, 95 Wis. 331, 70 N. W. 297; *In re Jackman's Will*, 26 Wis. 104; *Chafin Will Case*, 32 Wis. 569; *Wright* v. *Jackson*, 59 Wis. 584, 18 N. W. 486; *Loughney* v. *Loughney*, 87 Wis. 101, 58 N. W. 250; *Fay* v. *Vanderford*, 154 Mass. 498, 28 N. E. 681; *Newell* v. *Homer*, 120 Mass. 277; *Hudson* v. *Hughan*, 56 Kan. 152, 42 Pac. 701.)  ·

After a careful review of the transcript on appeal, the bill of exceptions, and authorities presented, we are of the opinion that the judgment should be affirmed, and it is so ordered.

TALBOT, C. J., and NORCROSS, J., concurring:

We concur in the judgment and in the opinion of SWEENEY, J., except in so far as it holds that the verdict of the jury is simply advisory, and as to that portion of the

opinion which may bear on the provisions of Comp. Laws, 2803, 2805, 3038, and 3067, we express no views, as we do not consider the question necessarily involved.